OPINION
{¶ 1} Defendant-appellant, Charlene K. Wellman ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas convicting her of voluntary manslaughter entered upon a jury verdict. Appellant was sentenced to serve a seven-year term of incarceration at the Ohio Department of Rehabilitation and Corrections.
 {¶ 2} The events leading up to the death of the victim in this case, Michael Jessie, began with a dispute about a stolen necklace, and involves three different families, the Wellmans, the Thompsons, and the Fraziers. In February 2004, appellant lived in a trailer park with her four children, John ("Little Johnny"), Natasha, Satasha, Misty, and the father of her children, John Francis ("Big Johnny"). Joe and Sophia Thompson lived on one side of the Wellmans, and the Fraziers lived on the other. The other individuals pertinent to this case, and associated with the Wellman family, are Little Johnny's friends, Anthony Henry ("Anthony"), Allen Rhodes ("Allen"), Josh Musselman ("Josh"), and Josh's girlfriend, Trinity Beasley ("Trinity"). The victim, Michael Jessie ("Michael"), is Trinity's cousin. Michael was also a friend of the Thompsons, and a previous co-worker of Little Johnny, as Michael, Joe Thompson, and Little Johnny used to lay carpet together.
 {¶ 3} On February 14, 2004, while Little Johnny, Anthony, Josh, and Trinity were in the Wellman trailer, Brian Frazier came over to ask Little Johnny to speak to Brian's dad, Gab Frazier. Little Johnny and Anthony went to the Frazier's trailer, whereupon Brian, Gab, and others accused Little Johnny of stealing a necklace. Little Johnny denied the accusations, and a fight ensued. The police came to the scene, took a report and left.
 {¶ 4} The following evening, the Fraziers, and as many as 40 to 50 people, surrounded the Wellman trailer. Some of the persons possessed baseball bats, and according to the testimony, the mob banged on the trailer, broke some windows, and eventually forced its way into the Wellman residence and smashed a television. Thereafter, the mob of persons left. Brian and Gab, however, returned with guns and fired at the Wellman trailer. The police came to the scene again, took another report, and left. After the police left, Little Johnny called Allen for help in repairing the damage to the trailer, and Allen arrived awhile later.
 {¶ 5} A few hours later, while Joe Thompson was outside looking at his trailer, Big Johnny told Joe that he would pay for repairs of any bullet holes, and in response Joe told Big Johnny that if he found any damage, he would kill both Big Johnny and Little Johnny. According to Sophia Thompson, Big Johnny and Joe were arguing and then Joe came into the trailer, and told Sophia to take the kids and leave the trailer. Sophia complied and took the children to a neighbor.
 {¶ 6} At some point shortly thereafter, Big Johnny, Little Johnny, Anthony, Allen and Josh were in the process of getting into a car, when Natasha yelled from the Wellman porch that Joe Thompson and Michael Jessie were approaching with guns. Little Johnny, Big Johnny, Anthony, and Allen ran to the porch, while Josh ran to the fence that bordered the Wellman yard. Big Johnny had a gun, and he exchanged gunfire with Joe. Big Johnny was shot and fell from the porch.[1]
 {¶ 7} After the gunfire, Little Johnny grabbed a baseball bat and jumped onto a trunk of a nearby car. Little Johnny and Michael had a brief stare-down, and when Michael looked away, Little Johnny struck him with the bat, causing Michael to fall. Thereafter, Little Johnny checked on Big Johnny, who did not respond, and then Little Johnny went back to Joe, who had also been shot during the gunfire, and "stomped him in the face." (Tr. at 200.)
 {¶ 8} At trial, Little Johnny testified that he saw appellant hit Michael with an unknown object. Allen testified that while fleeing across the street after the gunfire, he saw appellant standing in the yard. Sophia, who had returned to the Thompson trailer after taking her children to a neighbor, stated that she saw appellant hit Joe with her hands. Josh, although not testifying so at trial, told the police that after the gunfire he saw appellant with a bat. Natasha, appellant's daughter, told the police that she saw appellant hit Michael one or two times, although at trial, Natasha testified that she remembered only bits and pieces of the events of that night. Trinity testified that after Little Johnny, Anthony, Allen and Josh carried Big Johnny into the trailer, appellant was carrying a bloody baseball bat, and was frantically screaming that she thought she killed Michael. At trial, Trinity identified the baseball bat that appellant was carrying.
 {¶ 9} Appellant testified that she was passed out in her bedroom when the gunfire broke out, and that she remembered nothing about that night, except that "Johnny was dead." (Tr. at 969.) Appellant described that when she left her bedroom, she heard Little Johnny screaming that "Mike Jessie shot Dad," she saw Big Johnny on the couch and that her next memory was sitting in a police cruiser.
 {¶ 10} On February 27, 2004, appellant was indicted by a Franklin County Grand Jury on one count of murder. On January 31, 2005, a jury trial commenced in the Franklin County Court of Common Pleas, and on February 11, 2005, the jury rendered a verdict of guilty to the lesser-included offense of voluntary manslaughter. Appellant was sentenced to a seven-year term of incarceration. Appellant timely appealed, and asserts the following six assignments of error:
Assignment of Error No. 1:
The trial court committed plain error in permitting irrelevant and unfairly prejudicial hearsay testimony regarding out-of-court statements that Johnny Wellman did not cause the death of Michael Jessie, thereby depriving Appellant of her right of confrontation as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution and her right to a fair trial as guaranteed by theFourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
Assignment of Error No. 2:
The trial court committed plain error in permitting the jury to consider evidence that Appellant exercised her right to counsel during police interrogation, thereby depriving Appellant of her rights as guaranteed by the Fifth, Sixth, andFourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
Assignment of Error No. 3:
The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by overruling Appellant's motion for judgment of acquittal, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt each and every element of voluntary manslaughter.
Assignment of Error No. 4:
The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding Appellant guilty, as the verdict for the charge of voluntary manslaughter was against the manifest weight of the evidence.
Assignment of Error No. 5:
The failures of Appellant's trial counsel constituted ineffective assistance, thereby depriving Appellant of her rights as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
Assignment of Error No. 6:
The trial court erred in imposing a non-minimum sentence on Appellant, where the facts necessary to impose such a sentence had neither been proven to a jury nor admitted by Appellant, thereby depriving Appellant of her right to a jury trial as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 11} In her first assignment of error, appellant contends that the trial court erred in allowing testimony regarding Little Johnny's out-of-court statements that he did not cause Michael Jessie's death because Little Johnny's testimony consisted of inadmissible hearsay. Specifically, appellant directs us to the following exchange between Little Johnny and the prosecutor that occurred on re-direct examination:
[The State]: You stated on cross-examination that you thought you might have killed Michael Jessie?
[Little Johnny]: Yes, sir.
[The State]: Why did you think that?
[Little Johnny]: I didn't know — `cause I assaulted him, I didn't know if I was the one that killed him or somebody else did.
[The State]: How do you know you didn't kill him?
[Little Johnny]: My attorney came down and talked to me after he talked to the coroner.
(Tr. at 250-251.)
 {¶ 12} There was no objection to the above testimony at trial; therefore, appellant has waived all but plain error.State v. Keenan (1998), 81 Ohio St.3d 133; State v. Santiago,
Franklin App. No. 02AP-1094, 2003-Ohio-2877. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. State v.Moreland (1990), 50 Ohio St.3d 58. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, syllabus paragraph three.
 {¶ 13} Appellant argues that Little Johnny's testimony regarding his knowledge that he did not cause Michael's death is an out-of-court statement offered for its truth, and is therefore inadmissible hearsay. Appellee contends that the testimony with which appellant takes issue does not contain an assertion as defined by Evid.R. 801(A). We agree, and find that appellant's argument fails because the statement in question is not hearsay.
 {¶ 14} Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person, if it is intended by him as an assertion. Evid.R. 801(A). An assertion, for hearsay purposes, is a statement about an event that happened or a condition that existed. State v.LaMar, 95 Ohio St.3d 181, 197, 2002-Ohio-2128. In the instant case, Little Johnny did not testify as to anyone's out-of-court statements, thus there is no hearsay.
 {¶ 15} In State v. Grimes (July 2, 1986), Cuyahoga App. No. 50762, a similar scenario was presented during the testimony of a police officer, wherein the officer indicated that the Johnsons corroborated another's statement to the police. The following exchange took place:
Q. Now, were you provided information from either of [the Johnsons]?
A. Yes, both of them gave us information.
Q. Was that information — did it corroborate, or did it, in fact conflict with what you were told by Kirby Scott?
[Hearsay objection made and overruled.]
A. It did corroborate with Kirby Scott's.
 {¶ 16} In reviewing the above testimony on appeal, the court in Grimes held that since there was no specific out-of-court statement, there was no hearsay. Such is also the scenario presented before us. Little Johnny did not testify to anyone's out-of-court statements. Rather, he merely testified to what his belief was after he talked to his attorney who had talked to the coroner.
 {¶ 17} Even assuming arguendo that Little Johnny's testimony consisted of a "statement," the testimony was not offered for the truth, i.e., that Little Johnny did not cause Michael's death, but rather to demonstrate why Little Johnny believed that he did not cause Michael's death. Statements which are not intended to prove the truth of what was said are not hearsay. State v.Davis (1991), 62 Ohio St.3d 326, 343, certiorari denied (1992),506 U.S. 803, 113 S.Ct. 302. A statement is not hearsay when it is offered into evidence for a purpose other than "to prove the truth of the assertion by the declarant not on the witness stand at the time of the declaration." Staff Note to Evid.R. 801(C);Santiago, supra. On direct-examination, Little Johnny admitted lying to the police due to his initial fear that he killed Michael, and on cross-examination, defense counsel reiterated this point. In order to refute defense counsel's implications, appellee was entitled to show why Little Johnny believed that he did not cause Michael's death. Little Johnny's belief was relevant not only to negate the alleged bias implicated by defense counsel on cross-examination that Little Johnny received a favorable plea bargain[2] in exchange for testifying against his mother, but also to negate defense counsel's implications that Little Johnny was not credible. Under these circumstances, we find that Little Johnny's testimony does not constitute hearsay, and as such there is no error, let alone plain error, in its admission.
 {¶ 18} We are also unable to find plain error because appellant has failed to establish that the alleged error substantially affected the outcome of the trial. The coroner testified at length about the cause of Michael's death. As will be discussed further, the coroner's testimony coupled with the testimony of the other witnesses about the events that transpired that evening provided a sufficient basis upon which a jury could find appellant guilty of causing Michael's death. Even if Little Johnny's statement went to causation, which we have already found that it did not, causation was sufficiently established through the remaining evidence in the record. Thus, appellant is unable to establish that the outcome of the trial would clearly have been otherwise.
 {¶ 19} Likewise, we find no merit to appellant's argument that the admission of Little Johnny's testimony deprived her of her Sixth Amendment right to confront and cross-examine witnesses against her. The coroner, Dr. Patrick Fardal, testified at trial and was subject to cross-examination. The admission of hearsay does not violate the declarant's Sixth Amendment right to confrontation when, as here, the coroner, testifies at trial.State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, citingCalifornia v. Green (1970), 399 U.S. 149, 157-158,90 S.Ct. 1930; Keenan, supra. Thus, even assuming that Little Johnny's testimony constituted hearsay, there was no violation of appellant's constitutional right of confrontation.
 {¶ 20} Accordingly, appellant's first assignment of error is overruled.
 {¶ 21} In her second assignment of error, appellant contends that her constitutional rights were violated when the jury was permitted to consider evidence that appellant exercised her right to counsel during a police interrogation. During the direct-examination of Detective Larry Brown of the Columbus Police Department, Division of Homicide, appellee played a videotape of an interview that occurred after appellant's arrest. Present at the interview were appellant, Detective Brown and Detective Gravett, also of the Columbus Police Department. Appellant directs us to the following exchange that took place towards the end of the interview:
[Detective Brown]: Would you be willing to give us a sample of your DNA for us to compare it with stuff we found on that baseball bat?
[Appellant]: I think I need a lawyer, `cause I don't know what you're talking about DNA.
(Tr. at 477.)
 {¶ 22} Appellant argues that her recorded statement in which she exercised her right to counsel served as substantive evidence of her guilt, and left the jury with the inference that she wanted the opportunity to consult a lawyer in order to hide physical evidence of her involvement in the crime. Having raised no objection at trial, appellant has again waived all but plain error.
 {¶ 23} As a general matter, evidence of a defendant's post-arrest, post-Miranda invocation of counsel is inadmissible. State v. Leach, 102 Ohio St.3d 135,2004-Ohio-2147. However, for constitutional protection to attach, the accused must clearly and unequivocally invoke the right to counsel. State v. Davis (1994), 512 U.S. 452, 114 S.Ct. 2350. As recently stated by the Supreme Court of Ohio in State v.Jackson, 107 Ohio St.3d 300, 2006-Ohio-1:
* * * "[T]he suspect must unambiguously request counsel. * * * [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards [v. Arizona (1981), 451 U.S. 477,101 S. Ct. 1880, 68 L. Ed. 2d 378] does not require that the officers stop questioning the subject." Davis v. United States (1994),512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362.
Id. at ¶ 93.
 {¶ 24} In Jackson, the Supreme Court of Ohio found that the defendant's statements "I talked to a lawyer or something," or "when I talk to my lawyer" did not amount to a clear, unambiguous, or unequivocal invocation of the right to counsel. The Supreme Court stated:
* * * Other courts have found similar remarks to be ambiguous and thus not invoking the constitutional right to counsel. See, e.g., Mueller v. Angelone (C.A.4, 1999), 181 F.3d 557, 573-574
(defendant's question to police," do you think I need an attorney here" answered by headshaking, a shrug, and the statement "You're just talking to us," was not an unequivocal request); Dormire v.Wilkinson (C.A.8, 2001) 249 F.3d 801 ("Could I call my lawyer?" followed by police response of "yes" did not invoke the right to counsel); United States v. Zamora (C.A.10, 2000), 222 F.3d 756,766 ("I might want to talk to an attorney" was not "an unequivocal request for counsel").
Id. at ¶ 94.
 {¶ 25} Similarly, the Supreme Court of Ohio has held that "I think I need a lawyer," or statements of similar import are not unequivocal assertions of the right to counsel. See State v.Henness (1997), 79 Ohio St.3d 53, 62-63, certiorari denied byHenness v. Ohio (1997), 522 U.S. 971, 118 S.Ct. 422; State v.Brown, 100 Ohio St.3d 51, 2003-Ohio-5059. In Henness, during a police interrogation of the defendant, the police detectives questioned the defendant about a murder, and the defendant stated, "I think I need a lawyer because if I tell everything I know, how do I know I'm not going to wind up with a complicity charge?" Id. at 63. Analyzing the defendant's statement in light of Davis, the Henness court stated:
The court in Davis then concluded that the statement" Maybe I should talk to a lawyer" was insufficient to require that questioning cease. Like the court of appeals, we find that appellant's statement "I think I need a lawyer * * *" is just as ambiguous as the statement made by the defendant in Davis.
Id.
 {¶ 26} In a similar circumstance in Brown, supra, the Supreme Court of Ohio held that "don't I supposed to have a lawyer present" was "at best ambiguous." Id. at ¶ 19. Here, in light of the cases cited above, appellant's equivocal statement, "I think I need a lawyer, `cause I don't know what you're talking about DNA," does not amount to an invocation of counsel. See also, State v. Neal, Champaign App. No. 2000 CA-18, 2002-Ohio-6786 (finding that "Well, then I probably ought to talk to an attorney" was not a proper invocation of counsel). Unlike the factual scenario presented in appellant's authority where there was a clear and unequivocal request for counsel, i.e., the defendant clearly told the police to "talk to his lawyer," Combsv. Coyle (C.A.6, 2000), 205 F.3d 269, 279, appellant's alleged request for counsel was neither clear, nor unequivocal. Thus, we find no error, let alone plain error, in the admission of appellant's statement. Accordingly, we overrule appellant's second assignment of error.
 {¶ 27} In her third assignment of error, appellant argues that the trial court erred in overruling her motion for judgment of acquittal. In her fourth assignment of error, appellant contends that her conviction is against the manifest weight of the evidence. For ease of discussion, we will address these two assignments of error together.
 {¶ 28} Crim.R. 29(A) provides that:
The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
 {¶ 29} When presented with a challenge to the sufficiency of the evidence, the Supreme Court of Ohio has delineated the role of an appellate court as follows:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560, followed.)
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 30} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Further, in determining the sufficiency of the evidence, the court is not allowed to weigh the evidence. Statev. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80. The reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 31} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other."State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 35. (Citation omitted.) In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quotingMartin, supra.
 {¶ 32} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 33} Appellant argues that the evidence was insufficient to support a jury finding that appellant caused Michael's death. According to appellant, the ultimate issue at trial was whether Little Johnny, or appellant, delivered the fatal blow to Michael, and that other than Little Johnny's testimony, the evidence against appellant was all circumstantial.
 {¶ 34} "A conviction can be sustained based on circumstantial evidence alone." State v. Franklin (1991), 62 Ohio St.3d 118,124, citing State v. Nicely (1988), 39 Ohio St.3d 147, 154-155. In fact, circumstantial evidence may "`be more certain, satisfying and persuasive than direct evidence.'" State v.Ballew (1996), 76 Ohio St.3d 244, 249, quoting State v. Lott
(1990), 51 Ohio St.3d 160, 167, quoting Michalic v. ClevelandTankers, Inc. (1960), 364 U.S. 325, 330, 81 S.Ct. 6, 11. As will be explained, we find that there is sufficient evidence in the record to establish that appellant caused Michael's death.
 {¶ 35} Appellant directs this court to various portions in the record, which appellant argues, establish the insufficiency of the evidence. Specifically, appellant points to the following: (1) Little Johnny testified that he hit Michael once on the side of the head, but the coroner, Dr. Fardal, testified that the only severe injuries to Michael's head were in the front; (2) Little Johnny testified that he saw appellant hit Michael; however, he was unable to identify what appellant had in her hands at the time; (3) though Trinity saw appellant with a bloody baseball bat and heard appellant say that she thought she killed Michael, there were at least three associates of the Wellman family outside at the time; (4) no blood was collected from appellant; and (5) no physical evidence linked appellant to the baseball bats recovered from the scene.
 {¶ 36} Appellant is correct that, with the exception of Little Johnny's testimony, the evidence concerning appellant's involvement in Michael's death is circumstantial. As will be explained, however, we find that when viewed in the light most favorable to appellee, the circumstantial evidence presented could convince the trier of fact of appellant's guilt beyond a reasonable doubt.
 {¶ 37} As indicated previously, Little Johnny testified that he hit Michael with a baseball bat once on the side of the head, causing Michael to fall to the ground. Afterwards, while Michael was lying on the ground, Little Johnny saw appellant hit Michael with an unknown object. Two bloody baseball bats were recovered at the scene. Trinity testified that she saw appellant carrying a bloody baseball bat and that she heard appellant screaming that she thought she killed Michael. According to Trinity:
[Appellant] had a ball bat and she was just frantically like screaming, like she thought she killed Mike Jessie, and she was just screaming, and the ball bat was bloody.
(Tr. at 816.)
 {¶ 38} Trinity also identified, at trial, the baseball bat that she saw appellant carrying. Dr. Fardal described several injuries to Michael's head area, including laceration-type injuries to both the left and right forehead. However, Dr. Fardal repeatedly opined throughout his testimony that the semi-circular bruise on the middle portion of Michael's forehead was the result of the fatal blow that killed Michael. Dr. Fardal explained that whatever struck the middle of Michael's forehead caused the skull to be fractured under the bruised area. Dr. Fardal further opined that said injury was consistent with that inflicted from a baseball bat. Also of prominence is Dr. Fardal's discussion of the injuries to the back of Michael's skull. According to Dr. Fardal, the fractures in the back of the skull were consistent with injuries that would occur if Michael's head was against something solid, such as the ground, when the front, center portion of the head was fatally struck.
 {¶ 39} To the extent that appellant attempts to point out inconsistencies in the testimony, we reiterate that such issues are primarily determined by the trier of fact because the trier of fact is in the best position to determine whether the witnesses' testimony is credible. Jenks, supra; Williams,
supra. Taking all the testimony together, we find that when viewed in a light most favorable to the prosecution, a reasonable trier of fact could find, beyond a reasonable doubt, that appellant caused Michael's death.
 {¶ 40} To recapitulate, the testimony indicates that Little Johnny hit Michael once, which caused Michael to fall to the ground. While the testimony of several witnesses establishes that Little Johnny continued to assault Joe while he was lying on the ground, there is no evidence that Little Johnny did so to Michael. Further, Dr. Fardal's testimony establishes that Michael would have been lying on the ground when the fatal blow was inflicted. The evidence establishes that several people were outside after the gunfire ceased; however, Trinity places appellant, not only with a bloody baseball bat, but screaming that she thought she killed Michael.
 {¶ 41} Based on the evidence presented, viewed in a light most favorable to the prosecution, a reasonable trier of fact could have found beyond a reasonable doubt that appellant caused Michael's death. Thus, we find that the record contains sufficient evidence to sustain appellant's conviction.
 {¶ 42} Similarly, we cannot say that the verdict is against the manifest weight of the evidence. The basis for appellant's manifest weight argument is a reiteration of that argued in her sufficiency claim, which is essentially directing us to what we will refer to as discrepancies in the record. A conviction, however, is "not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."State v. Moore, Montgomery App. No. 20005, 2004-Ohio-3398, quoting State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757. The weight to be given to the evidence and the credibility of the witnesses are determinations that are primarily for the trier of fact. See DeHass, supra, at paragraph one of the syllabus.
 {¶ 43} Moreover, as discussed above, the witnesses' testimony is not necessarily at odds with the rest of the evidence in the record. In addition to the testimony previously discussed, Natasha, although testifying at trial that she "pretty much [had] blocked everything out," stated in response to the prosecutor's question about appellant hitting Michael, "I remember saying I might have seen her hitting one or two times, yes." (Tr. at 886.) The videotape of Natasha's interview with the police, played at trial to help Natasha refresh her recollection, shows Natasha telling the police that she saw appellant hit Michael two to three times, and then Little Johnny told appellant to stop and get into the house because Big Johnny was shot. During the interview, Natasha stated:
I think my little brother told her to fucking, I think he said, you need to fucking stop and get the fuck in the house, Dad's shot. And I think that's when she came running in the house and just dropped it, and she looked at the ball bat and she said, oh, my God, what have I done, and just let go of it.
(Tr. at 894.)
 {¶ 44} Upon review of the record, we find that there is nothing to indicate that the jury clearly lost its way or that any miscarriage of justice resulted.
 {¶ 45} Accordingly, we overrule appellant's third and fourth assignments of error.
 {¶ 46} In her fifth assignment of error, appellant contends that she was deprived of her constitutional right to effective counsel at trial. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Id. at 687. The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 47} According to Strickland:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687.
 {¶ 48} Appellant argues that her trial counsel was ineffective for the following reasons: (1) failure to object to an improper prosecution question regarding the cause of death as discussed in appellant's first assignment of error; (2) failure to object to evidence that appellant asserted her right to counsel as discussed in appellant's second assignment of error; (3) making improper and inexplicable objections that were not supported by the rules of evidence; (4) asking improper questions during cross-examination of an eyewitness; and (5) failure to request a jury instruction regarding accomplice testimony. According to appellant, these errors, individually and collectively, deprived her of the constitutional right to effective assistance of counsel.
 {¶ 49} In State v. Braxton (June 6, 1985), Franklin App. No. 84AP-924, this court held that where the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel. Id. This contention was recently reiterated by this court in State v. Horsley,
Franklin App. No. 05AP-350, 2006-Ohio-1208, ¶ 41:
"Defense counsel's failure to object does not automatically become an ineffective assistance of counsel unless the failure to object rises to the level of plain error." State v. Koogler
(Sept. 6, 1984), Franklin App. No. 84AP-221, 1984 Ohio App. LEXIS 10741, citing United States v. DeWolf (C.A.1, 1982),696 F.2d 1. To allow a defendant to claim ineffective assistance of counsel based on a failure to object at a time when error could be corrected or avoided would allow a defendant to whipsaw the state where a plain error claim failed. * * *
 {¶ 50} We held previously, in addressing appellant's first and second assignments of error, that the conduct complained of, i.e., the prosecutor's question to Little Johnny on re-direct examination, and appellant's alleged request for counsel at the police interview, did not constitute error, let alone rise to the level of plain error. Those findings do not change when viewed in a claim that counsel was ineffective. Thus, we find that in her first two arguments, appellant has failed to demonstrate that trial counsel committed errors so serious that, but for those errors, there would be a reasonable probability that the outcome of the trial would have been different. Thus, we will begin our discussion with addressing appellant's arguments relating to her trial counsel's improper objections at trial.
 {¶ 51} Appellant contends that her trial counsel made a number of objections that were not permissible under the rules of evidence. First, appellant complains about her trial counsel's objection to the admission of appellant's recorded statement to the police as a violation of her Fifth Amendment privilege against self-incrimination when there was a valid waiver of appellant's rights in the record. Second, appellant complains that her counsel inexplicably objected to the introduction of a 911 tape made at the time of the incident, and that her counsel made this same objection when a different witness testified about a different 911 call. According to appellant, since the calls did not address the credibility of the witnesses, trial counsel's objections were not justified.
 {¶ 52} Even if trial counsel's unmeritorious objections constituted error on behalf of appellant's trial counsel, appellant has offered no explanation whatsoever regarding how these alleged errors affected the outcome of her trial. If a defendant can establish that his or her trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms, a defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 294. Appellant does nothing more than point out three unmeritorious objections made by her counsel during the course of the trial. Further, as noted by appellee, the complained of objections were all made outside the presence of the jury, thus they played no role whatsoever in the jury's deliberations, and we fail to see how the outcome of the trial would have been different but for the making of trial counsel's three unmeritorious objections.
 {¶ 53} Appellant next argues that her trial counsel was ineffective with respect to his cross-examination of Trinity, wherein the following exchange occurred:
[Trinity]: I mean not — I didn't see [appellant] with blood on her clothes.
[Appellant's counsel]: You never did because she didn't have any blood on her clothes. So do you think that attributing the cause —
[Prosecutor]: Your Honor, objection that last statement.
[Appellant's counsel]: I'll withdraw it.
[The court]: Counsel, I'm going to sustain the objection whether you withdraw it or not. Counsel's statements of what counsel believes to be facts are not facts, it's up to the jury to decide what the facts are.
(Tr. at 824-825.)
 {¶ 54} Appellant argues that "the improper remark prompted the judge to admonish defense counsel in front of the jury, and created a negative impression for the jurors based on the actions of her attorney," and that "where the evidence is close, as it was in this case, prejudice from the lawyer's conduct must be presumed." (Appellant's Oct. 13, 2005 brief at 13.) However, appellant makes only this blanket assertion, and provides no authority to support her position regarding the alleged presumption. As required under Strickland, to establish a claim for ineffective assistance of counsel, a defendant first must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment." Id. at 687. A defendant is then required to show that the deficient performance prejudiced the defense, which requires "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id.
 {¶ 55} In the present case, we find that appellant has failed to establish either prong of Strickland with respect to her trial counsel's statement made during Trinity's cross-examination. Even if it was error for her counsel to make such statement, there is no evidence to suggest such a breakdown in the process that renders the conviction unreliable.
 {¶ 56} Lastly, appellant argues that her trial counsel was ineffective for failing to request a jury instruction on accomplice liability. Appellant contends that if a defendant testifies against an alleged accomplice, the trial court must substantially state:
The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
R.C. 2923.03(D)
 {¶ 57} Appellant argues that not only did the trial court fail to give this instruction, but also that her trial counsel failed to request it. After the jury was given its instructions, the following exchange took place outside the presence of the jury:
[Prosecutor]: One other thing. You talked about the grave suspicion instruction for Little Johnny, the co-defendant. I was reading over the jury instruction, and since these two individuals technically were not co-defendants in the sense that they were acting in complicity, I don't know if that instruction needs to be given.
[The court]: Well —
* * *
[Appellant's counsel]: Co-defendant. I guess he's technically not a co-defendant, he's already pled.
[Prosecutor]: That's not exactly — just because they're in the same indictment doesn't necessarily make them co-defendants.
[Appellant's counsel]: That is a gray area.
[The court]: I think what you're talking about is accomplice, A-C-C-O-M-P-L-I-C-E, in 405.41. You want me to read that?
[Prosecutor]: I'm not sure if all that applies. There's no evidence that they were accomplices. But considering —
[The court]: You know what, I don't think they are accomplices, and therefore, I think the instruction which talks about bias and interest and so forth —
[Appellant's counsel]: It covers it.
[The court]: The way Lew has argued the case, I think very clearly Johnny had a reason to lie about his mother, trying to tell you but not tell them. So probably, that's probably not an applicable instruction.
[Appellant's counsel]: I think that we probably covered it.
(Tr. at 1034-1035.)
 {¶ 58} The above discussion indicates that the trial court previously discussed the possibility of giving the R.C.2923.03(D) instruction with counsel. Thus, it would appear that appellant's trial counsel did in fact request the R.C. 2923.03(D) instruction, and therefore, appellant's claim that her trial counsel was ineffective for failing to request said instruction is meritless. Further, the trial court properly determined that the accomplice instruction was inappropriate given that there is no evidence in the record that Little Johnny and appellant were accomplices. Therefore, even if appellant's counsel did not specifically request the R.C. 2923.03(D) instruction, appellant is unable to establish that any prejudice occurred such that the outcome of the trial would have been different.
 {¶ 59} Lastly, given our disposition of appellant's claims regarding her trial counsel's actions, appellant's argument regarding cumulative error clearly fails. Accordingly, we overrule appellant's fifth assignment of error.
 {¶ 60} In her sixth assignment of error, appellant asserts that the trial court imposed her sentence in violation of jury trial principles afforded by the Sixth Amendment to the United States Constitution and in contravention of Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, and Apprendiv. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348. In State v.Foster, the Supreme Court of Ohio determined that portions of Ohio's sentencing statutes violate the Sixth Amendment to the United States Constitution in the manner set forth in Apprendi.
However, this court has recently held that a defendant who did not assert a Blakely challenge in the trial court waives that challenge, and is not entitled to a resentencing hearing based onFoster. See State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445. Appellant did not present a Blakely argument in the trial court even though appellant was sentenced after the Supreme Court's decision in Blakely. Thus, appellant could have objected to her sentence based on Blakely and the constitutionality of Ohio's sentencing scheme. Appellant, however, did not raise such challenge in the trial court, and therefore, appellant waived her Blakely argument on appeal. Accordingly, we overrule appellant's sixth assignment of error.
 {¶ 61} For the foregoing reasons, we overrule appellant's six assignments of error, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Petree, J., concurs.
Bryant, J., concurring separately.
[1] Big Johnny later died from his injuries.
[2] Little Johnny was initially charged with murder, but pleaded guilty to felonious assault and was sentenced to a four-year term of incarceration.