**The STATE of Ohio, Appellee,**

v.

**PLATFOOT, Appellant.**

[Cite as *State v. Platfoot,* 183 Ohio App.3d 349, 2009-Ohio-3769.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22865.

Decided July 31, 2009.

Stephanie L. Cook, Acting Chief Prosecuting Attorney for the city of Dayton, for appellee.

Carl G. Goraleski, Assistant Public Defender, for appellant.

---

FROELICH, Judge.

{¶ 1} Kenneth L. Platfoot appeals from a judgment of the Dayton Municipal Court, which found him guilty of improper operation of a motor vehicle and of failure to stop after an accident and sentenced him accordingly.

{¶ 2} Because the trial court improperly admitted hearsay testimony about who was at fault in the accident, the conviction for improper operation of a motor vehicle will be reversed. The conviction for failure to stop was supported by the evidence and will be affirmed.

I

{¶ 3} On the morning of March 20, 2008, Platfoot was driving south on Interstate 75 near the Route 4 interchange in Dayton in a red pickup truck. At the same time and place, Connie McKamey was also driving south on Interstate 75 in a white Oldsmobile, on her way to work in downtown Dayton. The driver's side of McKamey's Oldsmobile and the passenger side of Platfoot's truck collided as the vehicles traveled alongside one another. There was a narrow shoulder and

road construction in the vicinity of the accident, and neither driver stopped on the interstate.

{¶ 4} According to the state's evidence, McKamey called the police, pulled off the interstate at the second exit, First Street, and met a police officer near Sinclair Community College to report the accident. Dayton Police Officer Derric McDonald took her statement and examined the Oldsmobile. Platfoot proceeded to work in Waynesville, and he called the Highway Patrol that evening after he had returned home from work. Several days later, he met with Dayton Detective Gregory Jackson, who inspected the damage to the truck and took a written statement from him. Jackson also talked with McKamey by phone and reviewed Officer McDonald's report. Based on his investigation, Jackson cited Platfoot for improper operation in violation of the Revised Code of General Ordinances of the City of Dayton Section 71.18 and for failure to stop after an accident in violation of R.C. 4549.02.

{¶ 5} The trial court conducted a bench trial on May 23, 2008, and found Platfoot guilty as charged. He was fined $25 for improper operation, plus court costs, and his driver's license was suspended for six months retroactive to the date of the accident. Although he was found guilty of failure to stop after an accident, no fines or court costs were imposed on that charge.

{¶ 6} Platfoot raises two assignments of error on appeal.

## II

{¶ 7} Platfoot's first assignment of error states:

{¶ 8} "The court's admission of hearsay evidence denied appellant a fair trial."

{¶ 9} Platfoot claims that the trial court allowed "clearly inadmissible" hearsay evidence, over objection, when Officer McDonald testified that a witness to the accident had corroborated McKamey's version of events.

{¶ 10} Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person if that conduct is intended by him as an assertion. Evid.R. 801(A).

{¶ 11} At trial, Officer McDonald, Detective Jackson, McKamey, Platfoot, and one of Platfoot's passengers testified. McKamey testified that she had been driving in the center lane of Interstate 75 and that Platfoot had veered into her lane from her left as that lane exited to Route 4. Platfoot and his passenger testified that they had been in the middle lane and that McKamey had veered into their lane of traffic from the right lane of the interstate.

{¶ 12} Officer McDonald and Detective Jackson testified about their examinations of the parties' vehicles, the parties' accounts of the accident, and, in Officer McDonald's case, his examination of the scene of the accident. Officer McDonald also testified that he had talked by telephone with a witness to the accident, whom he identified as "Mr. Webb." No evidence was offered at trial as to Webb's vantage point at the time of the accident or how the police became aware that Webb had witnessed the accident. The prosecutor asked Officer McDonald whether his interview with Webb corroborated McKamey's explanation of what had happened. When defense counsel objected to this question, the prosecutor stated, "I'm not asking for what he said Judge. I just wanted to know whether it cooberated [sic] or not." The court overruled the objection, and Officer McDonald responded that Webb's statement had corroborated McKamey's account of the accident.

{¶ 13} Platfoot contends that the trial court erred in allowing Officer McDonald to testify that Webb had corroborated McKamey's account of the accident. He claims that McDonald's statement about Webb "was plainly testimonial in nature" and there was no evidence that Webb was unavailable to testify. In response, the state asserts that Officer McDonald's statements about the information provided by Webb were not hearsay because "Officer McDonald was never asked, nor did he attempt to repeat any statement made to him by Mr. Webb." The state relies on *State v. Grimes* (July 2, 1986), Cuyahoga App. No. 50762, 1986 WL 7523, in support of its argument.

{¶ 14} Other appellate districts have held that a police officer's statement that a witness corroborated information during an investigation is not hearsay because no specific out-of-court statement is presented. *Grimes; State v. Wellman,* Franklin App. No. 05AP–386, 2006-Ohio-3808, 2006 WL 2057895, ¶ 16. See also *State v. Stedman* (Nov. 1, 2001), Cuyahoga App. No. 77334, 2001 WL 1398469. We disagree with these holdings.

{¶ 15} The fact that a "Mr. Webb," whose vantage point, vision acuity, memory, connection to the parties, etc., were unknown, let alone untested, verified, supported, or strengthened McKamey's "explanation of events" was obviously offered by the state for some reason.

{¶ 16} The historic purpose of the hearsay rule is "to exclude statements of dubious reliability that cannot be tested by cross-examination." *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 70. If such "corroboration" can be admitted over objection, then in a case with numerous eyewitnesses, only one would need to be called and the officer could be asked whether all the others "corroborated" the one witness's testimony. Moreover, the admission of the officer's statement about what Webb said raises constitution-

al questions that we need not address. *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 17} In our opinion, there is no substantive difference between allowing a police officer to state which of two opposing views an out-of-court witness corroborated and allowing him to recount the actual substance of an out-of-court witness's statement. In other words, Officer McDonald testified to Webb's oral assertion about how the accident had occurred, even if he did not recount it verbatim. Such testimony violated Evid.R. 802, and no evidence was offered that the testimony fell within one of the exceptions set forth in Evid.R. 803. The trial court erred in allowing Officer McDonald to testify about the substance (and the "unexamined truth") of Webb's account of the accident, even if his actual statements were not repeated.

{¶ 18} We cannot conclude from this record that the trial court's error was harmless. The court stated that it found "McKamey's testimony to be highly credible" and concluded that Platfoot's version of events "just simply [did]n't make sense in terms of how somebody would react to a situation like this." The court did not specifically refer to Webb's corroboration of McKamey's account in its decision. However, because the trial court expressly overruled Platfoot's objection to Officer McDonald's hearsay testimony, we cannot indulge in the usual presumption in a bench trial that the trial court considered only relevant, material, and competent evidence. The record affirmatively demonstrates the trial court's acceptance of the improper evidence. See *State v. White* (1968), 15 Ohio St.2d 146, 151, 44 O.O.2d 132, 239 N.E.2d 65; *State v. Moler*, Montgomery App. No. 22106, 2008-Ohio-2081, 2008 WL 1921641, ¶ 48. Platfoot's conviction for improper operation was tainted by this hearsay evidence.

{¶ 19} The first assignment of error is sustained.

### III

{¶ 20} Platfoot's second assignment of error states:

{¶ 21} "The verdict of the trial court was against the manifest weight of the evidence."

{¶ 22} Platfoot's second assignment challenges the weight of the evidence supporting his convictions. With respect to his conviction for improper operation, we will not consider his argument regarding the weight of the evidence because our resolution of the first assignment of error renders it moot. App.R. 12(A)(1)(c). We will limit our discussion to whether his conviction for failure to stop was against the manifest weight of the evidence.

██ {¶ 23} R.C. 4549.02(A) requires a driver of a motor vehicle on public roads who has knowledge of an accident or collision with another vehicle to immediately stop his motor vehicle at the scene of the accident or collision and remain at the scene until he has given his name, address, and vehicle information to the driver of any other motor vehicle damaged in the accident or to any police officer at the scene of the accident. A driver's fault in an accident has no bearing on his obligation to stop and exchange information in accordance with R.C. 4549.02(A). *State v. Hinchliffe* (June 24, 1991), Stark App. No. CA–8294, 1991 WL 122339; *State v. Riffle* (Sept. 21, 2001), Vinton App. No. 00CA543, 2001 WL 1287150 (Harsha, J., concurring).

{¶ 24} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525, 2009 WL 282079, ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 25} Platfoot contends that his conviction is against the manifest weight of the evidence because the evidence established that both drivers failed to stop at the scene of the accident and reported the incident later. He also claims that the trial court improperly relied on the hearsay evidence discussed under the first assignment of error in convicting him.

{¶ 26} Platfoot admitted at trial that he did not stop on the interstate or pull off the interstate following the accident. He testified that he did not call 911 because "they always say 9–1–1 is for emergencies," so one of his passengers wrote down the Oldsmobile's license plate number, and they continued to their job site. Conflicting testimony was offered about whether the Oldsmobile exited the interstate. Platfoot and one of his passengers testified that the Oldsmobile also did not exit the interstate at the first few exits past the accident. According to Platfoot, he then passed the Oldsmobile and never saw it exit the interstate. Platfoot called the highway patrol about 11 hours later. McKamey, on the other hand, testified that she had exited as soon as she was able to do so, after signaling her intention to do so. She then followed the instructions she was given when she called 911 to meet a police officer to make a report. Officer McDonald corroborated this account in that he responded to a dispatch received at around 9:20 a.m. to meet McKamey on Third Street near Sinclair Community College

and the County Administration building, where he took her report of the accident.

{¶ 27} There was ample evidence, including Platfoot's own testimony, from which the trial court could have reasonably concluded that Platfoot failed to stop at the scene of the accident, as required by R.C. 4549.02(A). Even if McKamey also failed to stop "immediately," as required by a literal interpretation of R.C. 4549.02(A), her conduct did not excuse Platfoot's failure to stop. To that extent, McKamey's conduct was not relevant to whether Platfoot had violated the statute.

{¶ 28} Platfoot's claim that McKamey was at fault in the accident also had no bearing on whether he had violated R.C. 4549.02(A), because the statute requires both drivers to stop, regardless of fault. *Hinchliffe*, 1991 WL 122339. The trial court's consideration of hearsay evidence on the issue of fault was harmless with respect to Platfoot's conviction for failure to stop. Platfoot's second assignment of error is overruled.

## IV

{¶ 29} The judgment of the trial court will be reversed insofar as it convicted Platfoot of improper operation of a vehicle. The judgment will be affirmed insofar as it convicted Platfoot of failure to stop.

Judgment affirmed in part
and reversed in part.

FAIN and HARSHA, JJ., concur.

WILLIAM H. HARSHA, J., of the Fourth District Court of Appeals, sitting by assignment.