[Cite as *Girard v. Oakman*, 2018-Ohio-1212.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF GIRARD, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-T-0065** |
| GARY L. OAKMAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Girard Municipal Court, Case No. 2017 CRB 00252.

Judgment: Reversed and remanded.

*Michael E. Bloom*, Girard City Prosecutor, Girard Municipal Court, 100 North Main Street, Girard, OH 44420 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240, and *Sarah Thomas Kovoor*, Ford, Gold, Kovoor & Simon, Ltd., 8872 East Market Street, Warren, OH 44484 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.,

{¶1} Appellant, Gary L. Oakman, appeals his conviction for obstructing official business, a second-degree misdemeanor under R.C. 2921.31(A). Besides challenging the sufficiency and manifest weight of the evidence, he maintains that he was denied a fair trial because his trial counsel was not afforded ample time to prepare for trial. Upon reviewing the record, we reverse and remand.

{¶2} As of February 11, 2017, appellant and his wife lived at 1037 East Liberty

Street, Liberty Township, Trumbull County, Ohio. The couple had only been married for approximately eighteen months, and his wife had at least one adult child from an earlier relationship. At that time, appellant had a permit to carry a concealed weapon and was the owner of three firearms, at least two of which he kept in the home's main bedroom.

{¶3} On the date in question, the couple learned that a friend of the wife's son had died from a drug overdose the day before. Due to the sad news, the couple began drinking alcoholic beverages that evening, and soon became embroiled in an argument. During the confrontation, appellant knocked over a lamp in the living room and kicked a piece of furniture toward his wife. Although appellant did not hit his wife, he did attempt to take her cell phone away from her, claiming that she had been communicating with her ex-boyfriend.

{¶4} At some point during the altercation, the wife was able to lock herself in a spare bedroom. When appellant continued to yell that he wanted to see her phone, she called the Liberty Township Police Department for help. Before the police could arrive, appellant calmed down, went into the main bedroom, and locked the door. As a result, the wife was able to exit the spare bedroom and meet the police in the home's garage.

{¶5} Officer Robert Altier was one of the two policemen who responded to the wife's call. As part of his uniform that evening, Officer Altier wore a "dash" camera that made both a visual and audio recording of his encounter with the wife and appellant. A transcript of the audio recording was accepted into evidence at trial.

{¶6} During their initial conversation in the garage, the wife confirmed to Officer Altier that appellant had been drinking and was locked inside the main bedroom where he kept multiple firearms. Upon leading Officer Altier to the bedroom door, the wife was

2

eventually able to convince appellant to open the door and speak to the officers. Once the door was open, appellant and the wife immediately began to yell at each other; thus, the officers decided to take the two individuals into different rooms and speak with them separately. While the second officer took the wife to the kitchen, Officer Altier followed appellant back into the main bedroom.

{¶7} Upon entering the room, Officer Altier observed that there were no lights on, and immediately asked appellant where the light switch was. Appellant responded that the lights were controlled by a remote and began to search for that remote on the bed. The officer then asked if there were any guns in the room. Appellant gave a very confusing response to this question and continued to walk around the foot of the bed, appearing as if he was still looking for the "light" remote. Once appellant got around the corner of the bed, to where the width of the bed was between him and Officer Altier, he took steps toward a nightstand that was located near the far wall.

{¶8} In response to appellant's movements, Officer Altier pointed his flashlight on the nightstand and quickly saw a firearm sitting on top, in plain view. Therefore, the officer pulled his own weapon from its holster, pointed it at appellant, and ordered him to keep away from the firearm. Appellant did not stop immediately and continued toward the firearm with his hand extending forward, causing the officer to yell his command to stay away three more times. Ultimately, appellant did stop, but not before his hand was only six to eight inches away from the firearm. He then put his hands up in the air and backed away.

{¶9} In light of the foregoing incident, appellant was immediately placed under arrest and charged with domestic violence. However, approximately one month after the

3

incident, that charge was dismissed, and Officer Altier executed a new complaint charging appellant with obstructing official business under R.C. 2921.31(A). On March 15, 2017, appellant made his initial appearance before the trial court, entering a plea of not guilty to the sole charge. According to the trial court, as part of that proceeding, an agreement was reached that appellant's trial would be held on March 29, and that the trial would be before a jury if appellant filed a timely request.

{¶10} On the same day as the initial appearance, the clerk for the trial court sent a notice to both sides regarding the scheduled proceeding for March 29, 2017. Instead of stating that appellant's trial would be held on March 29, though, the notice indicated that the matter was set for a pretrial conference at that time. The mailing of the notice was noted by the clerk on the "Public Docket Information" sheet for the case.

{¶11} During the fourteen-day interim period between the initial appearance and the scheduled proceeding for March 29, 2017, appellant's trial counsel did not submit a request for a jury trial. One day before that scheduled proceeding, the clerk for the trial court issued a new notice stating that appellant's trial would go forward on March 29. A copy of this notice was faxed to defense counsel's office.

{¶12} A bench trial was held on the scheduled date. At the beginning of the trial, defense counsel moved for a continuance on the basis that her client would be denied a fair trial because one day was insufficient time to prepare for trial. In essence, counsel asserted that, since the clerk's original notice had stated that a pretrial conference was scheduled for the March 29 date, she had not taken all necessary steps to prepare for trial, including the filing of a jury demand. After the state responded, the trial court orally denied the continuance request. As the primary basis for its decision, the court quoted

4

from a transcript of the March 15, 2017 initial appearance. In the quote, the court stated that, in light of statements made by both attorneys, the case would be scheduled for trial on March 29, 2017.

{¶13} Officer Altier and appellant were the only two witnesses at trial. As part of their respective questioning of the witnesses, both the prosecutor and defense counsel tried to play the audio recording of the dash camera worn by Officer Altier the evening of the incident. However, certain difficulties arose in playing the recording; as a result, the trial court gave defense counsel an extension of time in which to submit a transcript of the audio recording. Once filed, the transcript was considered as evidence.

{¶14} In its written judgment, the trial court found that, by moving toward the gun on the nightstand and then not immediately stopping when so ordered by Officer Altier, appellant had purposely hampered or impeded both police officers in their investigation of the alleged domestic violence. Accordingly, the court found him guilty of the charged offense. After holding a separate sentencing hearing, the court sentenced appellant to thirty days in jail, but suspended twenty-seven of the days. The court also placed him on probation for one year.

{¶15} On appeal, appellant raises three assignments for review:

{¶16} "[1.] The trial court erred as a matter of law, by forcing appellant to go to trial in violation of his rights to due process of law and trial by jury.

{¶17} "[2.] The trial court's finding that appellant had committed the crime of obstructing official business was not supported by sufficient evidence.

{¶18} "[3.] Appellant's conviction is against the manifest weight of the evidence."

{¶19} Under his first assignment, appellant argues that he was denied a fair trial

5

because his trial counsel was not given timely notice of the trial date. He contends that his counsel did not receive any notice about the trial date until March 28, 2017, only one day before the scheduled proceeding on March 29. He also contends that, prior to the March 28, 2017 notice, the only notice his counsel had received from the trial court clerk had stated that the scheduled March 29 proceeding would only be a pretrial conference. Building upon this, appellant further argues that, in addition to the fact that his counsel did not have adequate time to prepare, he was denied his right to a jury trial because, by the time his counsel received the March 28 notice, it was too late to file a timely jury demand.

{¶20} In asserting the foregoing argument, appellant does not address the trial court's oral statement in overruling his motion for a continuance at the outset of his trial. As noted above, in concluding that appellant's trial counsel was provided adequate and timely notice of the trial date, the trial court quoted a portion of a transcript of his March 15, 2017 initial appearance proceeding. Specifically, the court stated:

{¶21} "And I'm going to read the relevant part of the transcript - - Page 6 of the transcript from that day. Regarding the time, [the prosecutor] indicated 45 days. [Defense counsel], we would also want a jury demand - - jury trial. Mr. Oakman said, yes. [Defense counsel] said, yes. The Court said, we got jury trials coming up on March 29. [The prosecutor] said, set it. I said, my next jury is coming September, October. You're starting a trial on the 20th. [Defense counsel] said, Monday, which would have the (*sic*) been the 20th. The Court then said, let's set it for the 29th. The next jury trial is in September.

{¶22} "And then the Court said, all right, let the record reflect, defendant appeared

6

in open court; acknowledged receiving a copy of the complaint; waived the reading; fully advised of his legal and constitutional rights; entered a plea of not guilty; did not waive his right to a speedy trial. The bond is set at 2,500 personal recognizance. Trial will be at 9:00 o'clock a.m. on March 29, 2017. Right now it's a bench trial unless you file a jury demand. [Defense counsel] said, I did in the other case but I'll refile and send it over to the court today. And upon then the hearing was concluded."

{¶23} Since the record before this court does not have a transcript of the March 15, 2017 proceeding, we cannot verify whether the foregoing statement by the trial court is an accurate quote. Nevertheless, the *trial* transcript readily shows that when the trial court read the quote from the prior proceeding into the record, defense counsel did not contest the accuracy of the quote. Moreover, in challenging the trial court's denial of his continuance request in his appellate brief, appellant has not contested the court's basic contention that the parties had agreed to go to trial on March 29, 2017.

{¶24} In addition, our review of the trial court's jacket for the instant case shows that, on the same date as the initial appearance proceeding, the trial court rendered a written order setting the matter for trial on March 29, 2017. This order was contained in the judgment setting forth the terms of appellant's bail. Accordingly, there is no dispute that the court intended for the March 29, 2017 proceeding to be the trial on the merits, not a pretrial conference.

{¶25} Notwithstanding the foregoing, there is no indication in the trial record that a copy of the "bail" judgment was mailed to the parties. Included in the record is a copy of the "Criminal/Traffic Docket" for the instant case, as prepared by the trial court clerk. As one of the entries on the docket for March 15, 2017, the clerk retyped the substance

7

of the trial court's "bail" judgment. Although the clerk accurately retyped the court's bail order, the clerk misstated the purpose of the upcoming March 29, 2017 proceeding; i.e., the clerk typed that a pretrial conference would be held on that date.

**{¶26}** As a separate entry on the docket for March 15, 2017, the clerk indicated that a notice had been issued stating that a "pretrial" was scheduled for March 29, 2017. Although the notice was consistent with the clerk's erroneous restatement of the "bail" judgment on the docket, it directly conflicted with the actual order in the judgment which set the case for trial on that date.

**{¶27}** As a general proposition, a trial court must "speak" only through its journal, not by oral pronouncements. *Mihovk v. Paulson*, 8th Dist. Cuyahoga No. 69987, 1996 WL 532079, *5 (Sept. 19, 1996). Furthermore, in the civil context, it has been held that the mere entry of the trial date on a court's docket provides constructive notice of that date to the parties. *Lopresti v. O'Brien*, 11th Dist. Geauga No. 2016-G-0084, 2017-Ohio-5637, ¶24, quoting *Ohio Valley Radiology Assocs., Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 125 (1986). Thus, if no additional steps had been taken, it is arguable that the trial court's order on the case jacket would have been sufficient notice that the case was scheduled for trial on March 29, 2017.

**{¶28}** However, following the trial court's entry of the "trial" order on the case jacket, the clerk issued the notice stating that only a pretrial conference would be held on March 29, 2017. This was the last notice defense counsel received until one day before that scheduled proceeding, when the clerk faxed a new notice stating that the case was set for trial. Given these circumstances, this court holds that defense counsel reasonably relied upon the clerk's "pretrial" notice, justifiably concluding that it was not necessary to

8

be prepared for trial on March 29, 2017.

{¶29} Since the offense of obstructing official business is a second-degree misdemeanor for which the maximum sentence is ninety days, the sole charge against appellant is considered a petty offense. *See* R.C. 2921.31(B); Crim.R. 2(D). In regard to petty offenses, Crim.R. 24(A) states:

{¶30} "In petty offense cases, where there is a right to a jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later."

{¶31} Pursuant to the foregoing analysis, appellant and his trial counsel did not receive proper notice of the trial date until one day before. Therefore, he was denied a fair opportunity to submit a timely jury demand. To this extent, not only was he denied his right to a jury trial, but defense counsel was not afforded sufficient time to prepare for trial. Since the trial court should have granted a continuance and set a new date for trial, appellant's first assignment has merit.

{¶32} Under his second assignment, appellant asserts that the sole charge against him should have been dismissed because the state's evidence was insufficient to satisfy the elements of obstructing official business. As his primary argument, he claims that none of his actions during the incident could be characterized as impeding the officers' investigation into the alleged domestic violence.

{¶33} "'A sufficiency of the evidence argument challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of

9

evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all elements of the charged offenses proven beyond a reasonable doubt.' *State v. Barno*, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at \*16, 2001 WL 1116908 [at \*5] citing *State v. Jones*, 91 Ohio St.3d 335, 345, 744 N.E.2d 1163, 2001-Ohio-57.  Whether sufficient evidence has been presented to allow the case to go to the jury is a question of law; thus, an appellate court is not permitted to weigh the evidence when making this inquiry.  *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at \*13, 1994 WL 738452 [at \*4] (citations omitted).  A reviewing court will not reverse a jury verdict 'where there is substantial evidence upon which the jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.'  *Id.* citing *State v. Eley* (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, at the syllabus.  Thus, an appellate court will examine the evidence and determine whether that evidence, 'if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt.'  *State v. Norwood*, 11th Dist. No. 2005-L-047, 2006-Ohio-3415, at ¶15, citing *State v, Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492."  *State v. Higgins*, 11th Dist. Lake No. 2005-L-215, 2006-Ohio-5372, ¶22.

{¶34}  The crime of obstructing official business is defined in R.C. 2921.31(A):

{¶35}  "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶36}  "R.C. 2921.31 has five essential elements: (1) an act by the defendant; (2)

10

done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant does so act without a privilege to do so." *State v. Brickner-Latham*, 3rd Dist. Seneca No. 13-05-26, 2006-Ohio-609, ¶25.

**{¶37}** Under his first evidentiary challenge, appellant maintains that there was no evidence to support a finding that he actually impeded the officers' investigation into the alleged domestic violence. Specifically, he asserts the evidence can only be interpreted to show that, when Officer Altier ordered him to stop walking toward the firearm on the nightstand, he immediately complied.

**{¶38}** The record does not support appellant's argument on this point. As noted previously, the evidence before the trial court included a written transcript of the audio recording made by Officer Altier's body camera. As to the moment at which appellant began walking toward the firearm, the transcript shows that the following exchange took place:

**{¶39}** "MR. OAKMAN: It's right here.

**{¶40}** "OFFICER ALTIER: Okay.

**{¶41}** "MR OAKMAN: I'll give you the remote, I know where the remote is.

**{¶42}** "OFFICER ALTIER: Hey, get - - get away from that gun.

**{¶43}** "MR. OAKMAN: I know - - the gun is there.

**{¶44}** "OFFICER ALTIER: Get away from the gun.

**{¶45}** "MR. OAKMAN: (Inaudible) it's - -

**{¶46}** "OFFICER ALTIER: Get away from that gun.

**{¶47}** "MR. OAKMAN: But again, no, I got - -are you guys kidding me?

11

**{¶48}** "OFFICER ALTIER: Get your hands - - get your hands away from that fucking gun.

**{¶49}** "MR. OAKMAN: The remote's over there.

**{¶50}** "OFFICER ALTIER: You were walking right toward it, man."

**{¶51}** The foregoing excerpt demonstrates that Officer Altier told appellant four separate times to get away from the firearm. Moreover, this clearly was not an instance in which Officer Altier said the four commands/orders all in a row, without interruption. Appellant made some type of statement in between all four commands. Therefore, the verbal exchange between Officer Altier and appellant supports the finding that appellant did not immediately comply with the officer's command to stay away from the gun. The officer had to repeat the command four times before appellant stopped.

**{¶52}** Generally, an individual can be found guilty of obstructing official business when he persists in performing a specific act when a police officer has told him to stop. *See State v. Jackson*, 11th Dist. Lake No. 2008-L-147, 2009-Ohio-6226; *State v. Hill*, 10th Dist. Franklin No. 10AP-177, 2010-Ohio-6121. In *State v. Watson*, 3rd Dist. Union No. 14-09-01, 2009-Ohio-6713, two police officers repeatedly told the defendant to stay away from his briefcase and to not put his hand inside. Despite the express order, the defendant pulled the briefcase over to him, opened it, and placed his hand inside. The Third Appellate District held that his actions constituted an affirmative act which impeded the officers' performance of their lawful duties. *Id.* at ¶36.

**{¶53}** In addition to the excerpt from the audio recording, Officer Altier testified that appellant did not stop walking toward the firearm until his extended hand was within six to eight inches from the firearm. Based upon this, the trial court justifiably found that

12

appellant did not immediately comply with the officer's command, and that his actions impeded both officers in their investigation of the alleged domestic violence. Accordingly, there was sufficient evidence for the trial court to hold that the elements of obstructing official business could be found beyond a reasonable doubt.

{¶54} As part of its findings that appellant acted purposely in trying to impede or obstruct the officers, the trial court concluded that he had attempted to deceive them as to whether he had any guns in the bedroom. Under his second evidentiary challenge, appellant contends that this finding is not supported by the evidence because he clearly told Officer Altier that there were guns in the bedroom.

{¶55} A review of the transcript of the audio recording shows that, after Officer Altier asked him whether he had any firearms with him in the bedroom, appellant stated:

{¶56} "MR. OAKMAN: No, no guns. I have guns. I have no guns, but it's right over here."

{¶57} The response is contradictory and confusing. In light of this, the trial court could justifiably find that, at least momentarily, appellant was unsure whether he wanted to inform the officers about the firearms. In turn, this supported the further finding that it was appellant's intention to pick up the gun.

{¶58} Since the state presented sufficient evidence to support a conviction for obstructing official business, appellant's second assignment is without merit.

{¶59} Under his last assignment, appellant contends that his conviction is against the manifest weight of the evidence because the trial court should have rejected Officer Altier's testimony as totally lacking in credibility. However, when a criminal case must be remanded for a new trial as a result of a legal error in the original proceeding, a "manifest

weight" argument is rendered moot and need not be addressed.  *State v. Platfoot*, 183 Ohio App.3d 348, 2009-Ohio-3769, 916 N.E.2d 1147, ¶22 (2d Dist.).

{¶60} The judgment of the Girard Municipal Court is reversed, and the case is hereby remanded for further proceeding consistent with this opinion.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.