[Cite as *State v. Young*, 2021-Ohio-1999.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2020CA00155 |
| ROCHARD SEBASTIAN YOUNG | |
| | |
| Defendant-Appellant | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Case No. 2020-CR-1003 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 10, 2021 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| KYLE L. STONE | BERNARD L. HUNT |
| Prosecuting Attorney | 2395 McGinty Road, N.W. |
| Stark County, Ohio | North Canton, Ohio 44720 |
| VICKI L. DESANTIS | |
| Assistant Prosecuting Attorney | |
| Appellate Section | |
| 110 Central Plaza South – Suite #510 | |
| Canton, Ohio 44702-1413 | |

*Hoffman, J.*

**{¶1}** Defendant-appellant Rochard Sebastian Young appeals the judgment entered by the Stark County Common Pleas Court convicting him of trespass in a habitation when a person is present or likely to be present (R.C. 2911.12(B)), domestic violence (R.C. 2919.25(C),(D)(3)), and obstructing official business (R.C. 2921.31(A),(B)), and sentencing him to an aggregate term of incarceration of 12 months. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On May 24, 2020, Appellant knocked on the apartment door on 25th Street in Canton, Ohio, where his on-and-off girlfriend, Ashley Butler, resided. Because Appellant appeared to be drunk, Butler grabbed her shoes and keys, and locked the door behind her. She went outside with Appellant, where they argued. Appellant walked back to the apartment building, but could not enter through the locked security door. Butler stood in front of the door to prevent Appellant from getting in. Appellant yelled at Butler, "Bitch, if you don't move your head, I'm going to punch your head through that glass." Tr. (1) 184. Butler believed Appellant would cause her physical harm. The pair entered the apartment building.

**{¶3}** The argument continued in the hallway of the building, causing Butler to fear neighbors would call the police. A neighbor who was acquainted with Appellant came to the hallway to try to talk to Appellant, but Appellant called her names and started throwing things. At some point, someone in the building called 911.

**{¶4}** Sgt. Anthony Birone of the Canton Police Department responded to the call. When he arrived, Appellant was sitting outside the building. Butler told Sgt. Birone she wanted Appellant to leave. When Sgt. Birone left the building, Appellant was walking

away. The officer asked Appellant if he needed a ride, and Appellant responded he did not. Sgt. Birone told Appellant not to go back to Butler's apartment.

{¶5} Shortly after Sgt. Birone left, Butler looked out her window and saw Appellant walking back up the street to her apartment. She left the building, went outside to the back parking deck, and called 911. When she walked around to the front of the building, she noticed her screened window was broken. Butler went back inside and found Appellant in her apartment, smoking a cigarette. Appellant asked Butler to make him some food. When the police arrived, Appellant motioned to Butler to "shh" and ran out the back door.

{¶6} Officer Camden Sens of the Canton Police Department responded to the call with his partner, Patrolman Johnson. Officer Sens saw Appellant running from the building. As Officer Sens approached, Appellant "juked" out of the officer's way, and stood squared up to the officer in a fighting stance. Appellant did not comply when asked to show his hands. Patrolman Johnson tackled Appellant. Appellant did not actively resist arrest, but became very tense and refused to give up his left hand to be handcuffed. Working in tandem, the two officers were able to handcuff Appellant.

{¶7} Appellant was indicted by the Stark County Grand Jury with aggravated burglary, domestic violence, obstructing official business, and resisting arrest.[1] The State amended the charge of aggravated burglary to a charge trespass in a habitation when a person is present or likely to be present.

{¶8} At his arraignment on July 2, 2020, Appellant refused representation by the public defender and indicated he would retain counsel. His arraignment was continued

---

[1] The charge of resisting arrest was not presented to the jury, and was nolled by the State on October 29, 2020, subsequent to trial.

to allow him to retain counsel. On July 10, 2020, Appellant had not yet retained counsel, and entered a plea of not guilty. On August 10, 2020, the State made a plea offer. Appellant again refused representation by the public defender, but had not retained counsel. The trial court appointed new counsel on August 11, 2020.

{¶9} On August 17, 2020, the trial court held a pretrial hearing. The trial court suggested Appellant sign a time waiver to allow his new counsel time to prepare for trial, but Appellant refused. The trial court at first believed based on House Bill 197, the statutory time within which Appellant must be brought to trial was tolled from the time of his May 24 arrest through July 30, and the 90 days within which Appellant must be brought to trial did not start until July 31.

{¶10} However, the trial court later determined the tolling bill only applied to cases where the time within which the defendant must be brought to trial expired between the dates of March 9, 2020, and July 30, 2020. Because Appellant's time would not expire until August 21, 2020, the tolling bill did not apply to Appellant. The trial court continued the case until September 23, 2020, based on a lack of available courtroom space due to the restraints of the Covid-19 pandemic, as well as the fact Appellant's counsel was newly appointed.

{¶11} The case proceeded to jury trial on September 23, 2020. Following trial, Appellant was convicted of all charges. The trial court sentenced him to twelve months incarceration for trespass in a habitation, 30 days incarceration for domestic violence, and 30 days incarceration for obstructing official business, with all sentences to be served concurrently for an aggregate term of twelve months in prison.

**{¶12}** It is from the October 2, 2020 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. THE APPELLANT'S STATUTORY SPEEDY TRIAL RIGHTS WERE VIOLATED WHEN HIS TRIAL WAS CONTINUED BEYOND THE STATUTORY TIME LIMITS, IN O.R.C. 2945.71.

II. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE APPELLANT'S CRIMINAL RULE 29, MOTION FOR ACQUITTAL.

I.

**{¶13}** In his first assignment of error, Appellant argues his statutory right to speedy trial was violated by the trial court's sua sponte continuance of the trial to September 23, 2020.

**{¶14}** We find the trial court did not err in its conclusion House Bill 197 did not toll the time within which Appellant must be brought to trial, as the bill was applicable solely to cases in which the expiration of the statutory speedy trial time occurred between the dates of March 9, 2020, and July 30, 2020. The parties and the trial court agreed the date by which Appellant must be brought to trial was August 21, 2020.

**{¶15}** R.C. 2945.72 allows the statutory speedy trial time to be extended as follows in pertinent part:

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]

**{¶16}** "When sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial." *State v. Mincy*, 2 Ohio St.3d 6, 441 N.E.2d 571 (1982). The record of the trial court must in some manner affirmatively demonstrate a sua sponte continuance by the trial court was reasonable in light of its necessity or purpose. *State v. Lee*, 48 Ohio St.2d 208, 209, 357 N.E.2d 1095, 1096 (1976).

**{¶17}** On August 20, 2020, which was prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing Appellant to trial, the trial court journalized an entry setting forth its reasons for the continuance:

After speaking with all parties, the Court has several concerns with such a quick trial date. First, there is a nationwide pandemic. This has caused enormous obstacles to almost all courts and proceedings in jury trials. The Stark County Common Pleas Court appointed a strategic planning committee, which for three months developed a protocol for

reinitiating jury trials. In doing so, after factoring in health regulations and social distancing, there are only two courtrooms in which to operate. Plexiglas has been installed for separating all parties and jurors. Thus, with five judges sharing two courtrooms, the majority of dates in the next several months have been filled, especially trying to address the cases in which time limitations are expiring after being halted during the tolling period. Therefore, the Court would not have an available courtroom to set forth a jury trial in the upcoming weeks. The Court has two trials scheduled to go next week, and shortly thereafter will oversee two murder cases.

At the same time, the Court has concerns on moving so fast since Defendant's counsel has only been on the case approximately ten days. The record demonstrates that he just received a 911 call and other critical evidence from the State of Ohio. In addition, counsel will need enough time to assist the Defendant in preparation of the case and file any motions that could benefit the Defendant.

**{¶18}** Judgment entry, August 20, 2020.

**{¶19}** A continuance to allow new counsel to prepare for trial may be a reasonable sua sponte continuance by the trial court. *See, e.g., State v. McRae,* 55 Ohio St.2d 149, 153, 378 N.E.2d 476, 479 (1978); *State v. Gartrell*, 3rd Dist. Marion No. 9-14-02, 2014-Ohio-5203, 24 N.E.3d 680, ¶ 114; *State v. Redelman,* 12th Dist. Clinton No. CA2012-04-010, 2013-Ohio-657, ¶ 24. A continuance based on a crowded docket may also be a reasonable continuance within the meaning of R.C. 2945.72(H). *See., e.g., State v. Lee,*

48 Ohio St.2d 208, 210, 357 N.E.2d 1095, 1096 (1976); *State v. Davis,* 5th Dist. Richland No. 2019 CA 0112, 2020-Ohio-3617, ¶ 28.

{¶20} Further, the Ohio Supreme Court has addressed the reasonableness of continuing cases due to the pandemic:

> And as all Ohio judges have been advised, trial judges have the authority to continue trials for defendants on a case-by-case basis without violating speedy-trial requirements. The Ohio Attorney General has opined that courts may suspend jury trials to prevent the spread of the coronavirus and they may do so consistent with state and federal speedy-trial obligations. 2020 Ohio Atty. Gen. Ops. No. 2020-002. Specifically, R.C. 2945.72(H) provides that speedy-trial time may be extended by "the period of any reasonable continuance granted other than upon the accused's own motion"; continuing a trial because of a pandemic state of emergency is "reasonable."

{¶21} *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609. ¶7.

{¶22} We find the trial court set forth detailed reasons for the continuance, both as to the need for time for newly appointed counsel to prepare for trial, and the unavailability of a courtroom based on the challenges facing the judicial system in coping with the ongoing global pandemic. We find the record establishes the reasonableness of the continuance, and Appellant's speedy trial rights were not violated.

**{¶23}** The first assignment of error is overruled.

II.

**{¶24}** In his second assignment of error, Appellant argues the trial court erred in denying his Crim. R. 29(A) motion for acquittal because the State failed to present sufficient evidence as to any of the charges.

**{¶25}** A Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue*, 5th Dist. Stark No. 2001CA00250, 2002–Ohio–351, *citing State v. Williams*, 74 Ohio St.3d 569, 576, 1996–Ohio–91, 660 N.E.2d 724; *State v. Miley*, 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996). Crim. R. 29(A) allows a trial court to enter a judgment of acquittal when the state's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim. R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the State, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a reasonable doubt. *State v. Franklin,* 5th Dist. Stark No. 2007–CA–00022, 2007–Ohio–4649 at ¶ 12, *citing State v. Dennis*, 79 Ohio St.3d 421, 1997–Ohio–372, 683 N.E.2d 1096.

**{¶26}** Appellant was convicted of trespassing in a habitation when a person is present or likely to be present in violation of R.C. 2911.12(B), which provides, "No person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

**{¶27}** Ashley Butler testified she saw Appellant walking toward her apartment building. She ran out the back of the building to call 911. When she walked around to the front of the building, she noticed her screened window was broken out. She went

back to the apartment, and found Appellant inside. He was smoking a cigarette, and asked her to make him some food. When Appellant heard the police arrive, he motioned for Butler to be quiet and he left the building. Officer Sens also testified the window to the apartment was broken. This is sufficient evidence from which a rational trier of fact could find all the elements of R.C. 2911.12(B) proven beyond a reasonable doubt.

**{¶28}** Appellant was also convicted of domestic violence in violation of R.C. 2919.25(C),(D)(3):

(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

(D)(3) Except as otherwise provided in division (D)(4) of this section, if the offender previously has pleaded guilty to or been convicted of domestic violence, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to domestic violence, a violation of section 2903.14, 2909.06, 2909.07, 2911.12, 2911.211, or 2919.22 of the Revised Code if the victim of the violation was a family or household member at the time of the violation, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to any of those sections if the victim of the violation was a family or household member at the time of the commission of the violation, or any offense of violence if the victim of the offense was a family or household member at

the time of the commission of the offense, a violation of division (A) or (B)

of this section is a felony of the fourth degree, and, if the offender knew that

the victim of the violation was pregnant at the time of the violation, the court

shall impose a mandatory prison term on the offender pursuant to division

(D)(6) of this section, and a violation of division (C) of this section is a

misdemeanor of the second degree.

**{¶29}** Appellant first argues the State did not present evidence he lived with

Ashley Butler at the time of the offense, and therefore did not present sufficient evidence

he was a family or household member.

**{¶30}** R.C. 2919.25(F) defines "family or household member" to include the

following:

(F) As used in this section and sections 2919.251 and 2919.26 of the

Revised Code:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the

offender:

(i) A spouse, a person living as a spouse, or a former spouse of the

offender;

(2) "Person living as a spouse" means a person who is living or has

lived with the offender in a common law marital relationship, who otherwise

is cohabiting with the offender, or who otherwise has cohabited with the

offender within five years prior to the date of the alleged commission of the act in question.

**{¶31}** Ashley Butler testified three or four years prior to this incident, she and Appellant had lived together as boyfriend and girlfriend.  This testimony was sufficient for a rational trier of fact to conclude Appellant was a "person living as a spouse" as defined by R.C. 2919.25(F)(2), and thus was a family or household member as defined by statute.

**{¶32}** Appellant also argues there was no evidence he harmed Ashley Butler. Appellant was convicted of R.C. 2919.25(C), which does not require actual harm, but requires proof Appellant by threat of force caused Butler to believe he would cause her imminent physical harm.  Butler testified Appellant threatened to punch her head through the glass if she did not move from blocking the door to the apartment building.  When asked if she felt he was going to cause her physical harm, she responded, "Hell yeah." Tr. (1) 184.  This evidence was sufficient to support a finding Appellant caused Ashley Butler to believe he would cause her imminent physical harm.

**{¶33}** Appellant was convicted of obstructing official business in violation of R.C. 2921.31(A):

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

**{¶34}** Appellant argues he had his hands at his sides when he was tackled and arrested, and the State therefore did not produce any evidence he committed the crime of obstructing official business.

**{¶35}** To be guilty of the offense of obstructing official business, an individual must commit an overt act done with an intent to obstruct a public official, such as a police officer, and the act must succeed in actually hampering or impeding that officer. *State v. Davis,* 2017-Ohio-5613, 94 N.E.3d 194, ¶ 37 (2d Dist. Montgomery). "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Henry*, 2018-Ohio-1128, 110 N.E.3d 103, ¶ 55 (10th Dist. Franklin), *quoting State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 12 (1st Dist. Hamilton).

**{¶36}** "Generally, an individual can be found guilty of obstructing official business when he persists in performing a specific act [after] a police officer has told him to stop." *Girard v. Oakman*, 2018-Ohio-1212, 110 N.E.3d 530, ¶ 52 (11th Dist. Trumbull). For example, the Third District Court of Appeals affirmed a conviction under R.C. 2921.31 where the defendant "grabbed [his] briefcase, unzipped it, and put his hands wrist-deep into it" after "repeatedly" being told by police "to stay away from his briefcase." *State v. Watson*, 3d Dist. Union No. 14-09-01, 2009-Ohio-6713, ¶ 6, 36. Although the defendant in *Watson* claimed to have thought the officers intended to harass him by conducting a fabricated investigation, "his decision to disbelieve them, disobey their orders, and, in turn, to delay their investigation, was made at his own peril." *Id.* at ¶ 36.

**{¶37}** This Court affirmed a conviction of obstructing official business where the defendant, when police officers arrived in response to a domestic violence complaint, refused to provide information to the officers, prevented her companion from providing any information to the officers, and repeatedly talked over the officers as they attempted to conduct their investigation. *State v. Willey,* 2015-Ohio-4572, 46 N.E.3d 1121 (5th Dist. Stark).

**{¶38}** Similarly, in *State v. Shepherd,* 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, this Court agreed with the Twelfth District Court of Appeals' rationale in *State v. Florence,* finding interference with an investigation rises to the level of obstructing official business:

> "For the purposes of an affirmative act, we have previously found that moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business. *State v. Merz,* 12th Dist. Butler No. CA97–05–108, 2000 WL 1051837 (July 31, 2000). Additionally, a defendant's volume and demeanor making it impossible to investigate a complaint has been found sufficient to constitute an act for an obstructing official business conviction. *City of Warren v. Lucas,* 11th Dist. Trumbull No. 99–T–0019, 2000 WL 655446 (May 19, 2000)."

**{¶39}** *Shepherd* at ¶31, *citing State v. Florence,* 12th Dist. Butler No. CA2013–08–148, 2014-Ohio-2337, ¶ 12.

**{¶40}** In the instant case, Officer Sens testified he saw Appellant running from the building, and when he caught up with Appellant, Appellant, "kind of juked out of my way as I was trying to go hands-on with him." Tr. (1) 148. Officer Sens testified Appellant stood squared up to him, as if Appellant was in a "fighting stance." Officer Sens asked Appellant to show his hands, and Appellant did not comply with the order. Ptl. Johnson then tackled Appellant. Officer Sens testified Appellant did not actively resist the arrest, but Appellant was tense and refused to give up his arms to be handcuffed. Officer Sens described Appellant's conduct as "passive resistance:" Appellant was not fighting, but not letting the officers place him in custody. We find the testimony of Officer Sens was sufficient evidence, if believed by the jury, to support a conviction of obstructing official business.

**{¶41}** The trial court did not err in overruling Appellant's Crim. R. 29(A) motion for a directed verdict of acquittal.

**{¶42}** The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, J.

Baldwin, P.J. and

Delaney, J. concur