[Cite as *State v. Woodley*, 2024-Ohio-2538.]

COURT OF APPEALS
COLUMBIANA COUNTY, OHIO
SEVENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Sitting by Assignment by the Ohio |
| | : | Supreme Court |
| | : | |
| QAMIRR WOODLEY | : | Case No. 2023-CO-48 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Columbiana
Municipal Court, Case No. 2022-
CRB-01107


JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            July 1, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

SHELLEY M. PRATT                          MICHAEL P. DUNHAM
135 South Market Street                   3383 West 123 Street, Apt. 1
Lisbon, OH 44432                          Cleveland, OH 44111

*King, J.*

{¶ 1}   Pursuant to our Judgment Entry filed June 21, 2024 granting Defendant-Appellant Qamirr Woodley's Motion to Reconsider, we address his assignments of error as originally raised in *State v. Woodley* 2024-Ohio-1867 (7th Dist.). Plaintiff-Appellee is the State of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 16, 2022, Liverpool Township Police Department officers John Shaughnessy and Jay Cargnel were dispatched to a residence on Inez Road in East Liverpool for a report of a domestic violence. The officers had no information other than the report had been made by a male. Upon arrival, officers observed Woodley standing in the driveway and his girlfriend sitting in a red SUV. Woodley was openly smoking marijuana and refused to provide officers with his information when asked for the same, but did claim he had a medical marijuana card. When officers attempted to detain Woodley, he became combative and a scuffle ensued between he and the officers. One officer was injured before Woodley was tased, handcuffed, and taken into custody.

{¶ 3}   Woodley was subsequently charged with one count each of resisting arrest and obstructing official business, misdemeanors of the second degree.

{¶ 4}   Woodley pleaded not guilty to the charges and elected to proceed to a bench trial which took place on September 14, 2023. At the conclusion of evidence, and after taking the matter under advisement, the trial court found Woodley guilty as charged. Woodley was sentenced to 10 days of jail time on each count to be served concurrently, and a $250 fine on each count.

{¶ 5}   Woodley filed an appeal which we originally dismissed as moot because Woodley's reply brief indicated he had served his sentence in its entirety. Woodley filed

a motion to reconsider indicating he still owed fines. We therefore granted his motion to reconsider and address his original three assignments of error as follow:

I

{¶ 6} "UNDER OHIO LAW, A PERSON CAN ONLY BE CONVICTED OF OBSTRUCTION OF OFFICIAL BUSINESS WHEN AN OVERT ACT OCCURS, NOT AN OMISSION. A SUSPECT CANNOT BE REQUIRED TO PROVIDE IDENTIFICATION UNLESS THERE IS A REASONABLE SUSPICION. RESISTING ARREST REQUIRES EITHER FORCE OR RECKLESSNESS IN RESISTANCE TO A LAWFUL ARREST. THE TRIAL COURT ERRED IN CONVICTING MR. WOODLEY BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO CONVICT HIM OF THE CHARGES OF OBSTRUCTION OF OFFICIAL BUSINESS AND RESISTING ARREST."

II

{¶ 7} "THE TRIAL COURT ERRED IN CONVICTING MR. WOODLEY BECAUSE HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

III

{¶ 8} "A DEFENDANT HAS THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. WHEN AN APPOINTED ATTORNEY AND A DEFENDANT HAVE A BREAKDOWN OF RELATIONSHIP, THEN THE COUNSEL SHOULD BE SUBSTITUTED. THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING MR. WOODLEY'S REQUEST FOR SUBSTITUTION OF COUNSEL."

I, II

{¶ 9} We elect to address Woodley's first and second assignments of error together as they are interrelated. In these assignments of error Woodley challenges the sufficiency and manifest weight of his convictions.

Standard of Review

{¶ 0}    On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

Obstructing Official Business

{¶ 1}    Woodley makes two arguments in support of his contention that his conviction for obstructing official business is not supported by sufficient evidence. First, he argues officers lacked reasonable suspicion to demand his identity. Second, he argues he did not commit an overt act which is required to support a conviction for obstructing official business. On the facts of this case, we disagree.

{¶ 2}    Woodley was charged with obstructing official business pursuant to R.C. 2921.31(A). That section provides "[n]o person, without privilege to do so and

with purpose to prevent, obstruct, or delay the performance by a public official of any

authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶ 10} Sufficient evidence of the offense of obstructing official business requires a showing that an individual committed an overt act done with an intent to obstruct a public official, such as a police officer, and the act must succeed in actually hampering or impeding that officer. *State v. Davis*, 2017-Ohio-5613, ¶ 37 (2d Dist.). "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Henry*, 2018-Ohio-1128, ¶ 55 (10th Dist.), quoting *State v. Wellman*, 2007-Ohio-2953, ¶ 12 (1st Dist.).

{¶ 11} The Fifth District Court of Appeals has previously found that needlessly stalling and escalating an investigation is an overt act. *State v. Willey*, 2015-Ohio 4572 ¶ 24 (5th Dist.). Additionally, in *State v. Florence,* 2014-Ohio-2337, ¶ 12 (12th Dist.), the Twelfth District Court of Appeals found interference with an investigation rises to the level of obstructing official business:

> For the purposes of an affirmative act, we have previously found that moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business. *State v. Merz*, 12th Dist. Butler No. CA97-05-108, 2000 WL 1051837 (July 31, 2000). Additionally, a defendant's volume and demeanor making it impossible to investigate a complaint has been found sufficient to constitute an act for an obstructing official business conviction. *City of Warren v.*

*Lucas*, 11th Dist. Trumbull No. 99-T-0019, 2000 WL 655446 (May 19, 2000)."

{¶ 12} *Florence* at ¶ 12.

{¶ 13} Here, the business before the two officers was to investigate a report made by a male of domestic violence between himself and his girlfriend. Once officers arrived, Woodley was the only male present and he refused to cooperate with the investigation that he himself began. While Woodley argues the officers lacked reasonable suspicion to ask for his name, again, Woodley summoned the officers to his location by reporting a domestic violence. Once they arrived, Woodley refused to provide his name, stated he did not know why he needed to, and became angry and agitated over being asked for his name. Transcript of trial (T.) 7-8, 25. Both officers attempted to explain to Woodley that his information was necessary to properly investigate and document the allegations. T. 78, 25. When Officer Shaughnessy started to walk towards the car Woodley's girlfriend was seated in, Woodley screamed "get the fuck away from [me]." T. 18, 25. At that point Shaughnessy noted Woodley was openly smoking marijuana in a manner that would not be permitted even if Woodley did have a medical marijuana card. T. 25, 30. Officer Shaughnessy therefore advised Woodley he was going to be detained. T. 14, 25. When Shaughnessy attempted to put handcuffs on Woodley, Woodley put one hand in his pocket to prevent Shaughnessy from doing so, and with the other hand pushed Officer Shaughnessy's arms away. Woodley then spun away from Shaughnessy. T. 25, 27.

{¶ 14} In *State v. Young*, 2021-Ohio-1999, (5th Dist.) the Fifth District Court of Appeals found similar behavior of refusing to give up hands to be handcuffed, if believed

by the trier of fact, was sufficient to support a conviction for obstructing official business. *Id.* ¶ 40. In *State v. Willey*, 2015-Ohio 4572 (5th Dist.), the Fifth District found the appellant's "argumentative demeanor needlessly escalated the entire incident and entirely stalled the investigation into the original complaint." *Id.* ¶ 24. Like Woodley, the appellant in *Willey* characterized her behavior as an omission. However, the court found she acted affirmatively by making it impossible to investigate the complaint. *Id.* We find the same is true under the facts of this case. Woodley needlessly stalled and escalated the investigation. We therefore find Woodley's conviction for obstructing official business is supported by sufficient evidence.

{¶ 18} While Woodley argues he was unlawfully arrested in his own home without a warrant for minor misdemeanor marijuana possession, this does not sway our decision. First, it was Woodley who summonsed officers to his home by calling 911 to report an incident of domestic violence, and fully expected, per his own testimony, for officers to "come and calm the situation down." T. 44. Second, this court has found that a suspect who flees or otherwise impedes the completion of an officer's lawful duties, even after committing a minor non-arrestable offense, can be convicted for obstructing official business. *State v. Hasley*, 2004-Ohio-7065, ¶ 59 (7th Dist). The First District Court of Appeals in *State v. Davis*, 140 Ohio App.3d 751(2000) found that "even though a defendant could not have been arrested for a minor-misdemeanor pedestrian offense that was witnessed by police officers, the officers still had probable cause to arrest the defendant for obstructing official business. The court reasoned that the officers had the right to detain the defendant to issue a citation for the pedestrian violation, and evidence showed that after the defendant became aware that officers were trying to detain him, he continued to walk away from them." *Hasley* at ¶ 59 citing *Davis*.

{¶ 19} As to Woodley's manifest weight argument, while Woodley testified on his own behalf and made certain claims contrary to those of the police officers, the trial court was free to believe all, part, or none of any witness's testimony, including Woodley's. After a review of the entire record, we find no evidence that the trial court as the finder of fact lost its way in weighing the evidence, making its credibility determinations, and convicting Woodley of obstructing official business. Accordingly, we find Woodley's conviction for obstructing official business is not against the manifest weight of the evidence.

Resisting Arrest

{¶ 20} Woodley next argues his conviction for resisting arrest is against the manifest weight and sufficiency of the evidence.

{¶ 21} Woodley was charged with resisting arrest pursuant to R.C. 2921.33(B) which provides "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer."

{¶ 22} Woodley argues his arrest was unlawful because there was insufficient evidence to arrest him for obstructing official business. However, as discussed above, we find Woodley's conviction for obstructing official business was not against the manifest weight or sufficiency of the evidence. Further, when Officer Shaughnessy advised Woodley he was going to be detained and attempted to put handcuffs on Woodley, Woodley put one hand in his pocket to prevent Shaughnessy from doing so, and with the other hand pushed Officer Shaughnessy's arms away. Woodley then spun away from Shaughnessy. T. 25-27. When Officer Cargnel intervened and attempted to take Woodley to the ground, Cargnel was injured during the ensuing struggle. T. 25-26.

{¶ 23} We find Woodley's conviction for resisting arrest is supported by sufficient evidence and after a review of the entire record, we find that the trial court did not lose its way in so convicting him.

{¶ 24} The first and second assignments of error are overruled.

III

{¶ 25} In his final assignment of error, Woodley argues the trial court abused its discretion when it denied his verbal request for new counsel. We disagree.

{¶ 26} "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 27} In the context of reviewing a claim by a defendant that the trial court abused its discretion by overruling the defendant's request to discharge court appointed counsel and to substitute new counsel for the defendant, it is well established that a defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision denying the defendant's request to discharge court appointed counsel and substitute new counsel. In *State v. Cowans*, 1999-Ohio-250, the Supreme Court of Ohio noted:

"A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism." *Brown v. United States* (C.A.D.C.1959), 264 F.2d 363, 369 (en banc), quoted in *McKee v. Harris* (C.A.2, 1981), 649 F.2d 927, 932. " 'If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.' " *McKee*, 649 F.2d at 932, quoting *McKee v. Harris* (S.D.N.Y.1980), 485 F.Supp. 866, 869.

{¶ 3}    *Cowans*, at 73.

{¶ 4}    Similarly, it has been held that hostility, tension, or personal conflicts between an attorney and a client which do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See *State v. Henness*, 79 Ohio St.3d 53, 65-66 (1997).

{¶ 5}    In this matter, during a status conference held on September 5, 2023, counsel for Woodley raised the issue of tensions between he and his client and stated he was unsure whether there was a workable attorney-client relationship between them. Transcript of status hearing (T.St.) 2-3. Counsel indicated Woodley was not listening to any advice he offered. Woodley did not request substitution of counsel. Instead, under questioning by the court, Woodley indicated he was willing to work with and listen to counsel. T.St. 4-5. The trial court advised Woodley that if he felt he could not communicate with his counsel, the court would appoint different counsel, or he could hire someone on his own. T.St. 4. Woodley indicated he would like to continue with his current

counsel. T.St. 5. While Woodley argues here that he was given no opportunity to explain himself, the transcript reflects Woodley had every opportunity to do so.

{¶ 28} Woodley continued through trial with the same counsel and does not allege that the attorney-client relationship in any way impacted his attorney's presentation of a competent defense. The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *State v. Lindsay, II*, 2011-Ohio-4747, ¶ 34 (5th Dist.); *State v. Burroughs*, 2004-Ohio-4769, ¶ 11 (5th Dist.).

{¶ 29} Finding no abuse of discretion, we overrule the third assignment of error.

{¶ 33} The judgment of the Columbiana Municipal Court is affirmed.

By King, J.,

Delaney, P.J. and

Baldwin, J. concur.

AJK/rw