[Cite as *State v. Anderson*, 2024-Ohio-5189.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JASMINE A. ANDERSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0004

---

Criminal Appeal from the
Belmont County Court, Eastern Division, of Belmont County, Ohio
Case No. 23CRB00322-01

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor and *Atty. Jacob A. Manning*, Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Martin E. Yavorcik*, for Defendant-Appellant

Dated: October 25, 2024

---

_____

**WAITE, J.**

{¶1} Appellant Jasmine A. Anderson argues that her conviction for obstruction of official business was against the sufficiency and manifest weight of the evidence. The record shows that Appellant interfered with the Village of Brookside Fire Department in putting out a fire in front of her home. She was on the porch of the house while the fire raged out of control in front of it. She ordered the fire chief to get off of the property and threatened to kill him. When police arrived, Appellant entered the house, barricaded one door, and went into the attic. The police eventually found her and arrested her in the attic. The record contains ample evidence that Appellant interfered with both the fire department and with the police in carrying out their duties. Appellant's assignment of error is without merit, and her conviction and sentence are affirmed.

Facts and Procedural History

{¶2} On September 14, 2023, Appellant was arrested and charged in Belmont County Court, Eastern Division, with two misdemeanor counts: obstruction of official business and menacing. The charges resulted from Appellant's actions while police and firefighters were responding to a fire on the hillside in front of Appellant's home at 14 Elm Street in the Village of Brookside. The fire was out of control, reaching fifteen to twenty feet high, and was extending to the telephone and electric lines in the area. When Allan Ketzell, Fire Chief of Brookside Fire Department, approached Appellant's home, Appellant yelled threats from her porch to Chief Ketzell and told him not to come near her house. These included: "Get the F off my property. I will kill you if you don't." (2/12/24 Tr., pp. 165, 199.) Ketzell identified Appellant as the person threatening him and telling him to stay off of the property. Appellant's father was also on the scene, trying to put out

the fire with a garden hose and interfering with the fire department personnel. Since Chief Ketzell was being threatened, preventing him from putting out the fire and getting Appellant to a safe location, he called for police assistance.

{¶3} When police arrived on the scene, they discovered that Appellant had outstanding warrants. They saw Appellant run into the house, and ordered her to exit the house, telling her she was under arrest on the outstanding warrants. Police did not immediately enter the house because they were concerned about being attacked by Appellant's dogs. They also were aware that they did not have primary jurisdiction over the matter, and were waiting for the county sheriff to arrive.

{¶4} By the time the sheriff's deputies arrived, Appellant had barricaded one of the doors. Sergeant Mike Sabol of the sheriff's department took charge of the scene. Sergeant Sabol was able to get confirmation that Appellant barricaded herself in the house and that she was subject to multiple open warrants. As the police had surrounded the house, and Appellant's father was outside and was not cooperating with the investigation, Sabol and his men proceeded to search the house room by room, finding Appellant in the attic. Sabol placed her under arrest.

{¶5} The case proceeded to jury trial on February 12, 2024. The state dismissed the menacing charge at the start of the trial. The state called the Brookside fire chief, two Bridgeport police officers, and Sergeant Sabol of the sheriff's department as witnesses. Appellant called Gwendolyn Stewart, her sister, as a witness. The jury convicted Appellant of obstructing official business, R.C. 2921.31(A), second degree misdemeanor.

{¶6} Sentencing took place on February 22, 2024. The court sentenced Appellant to 90 days in jail and court costs, with credit for 10 days. The sentencing entry

was filed on February 22, 2024 and the notice of appeal was filed on February 27, 2024. A nunc pro tunc sentencing entry was filed on March 25, 2024.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN ALLOWING A CONVICTION WHERE IT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶7}** Appellant's argument involves an attack on both the sufficiency and manifest weight of the evidence offered against her at trial. These are distinct but related legal concepts. "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin-McCaffrey*, 2010-Ohio-617, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 2009-Ohio-1023, ¶ 14 (7th Dist.), citing *State v. Robinson*, 162 Ohio St. 486 (1955). When reviewing a conviction for sufficiency of the evidence, an appellate court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 2015-Ohio-1882, ¶ 14 (7th Dist.).

**{¶8}** Further, in reviewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). A conviction cannot be reversed on the

grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt.  *Id.*

{¶9}  Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.)  *Thompkins* at 387.  It is not a question of mathematics, but depends on the overall effect of the evidence in inducing belief.  *Id.*  Weight of the evidence involves the state's burden of persuasion.  *Id.* at 390.  (Cook, J. concurring).  An appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.  *State v. Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins* at 387.  This discretionary power of an appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.  *Id.*

{¶10}  "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."  *State v. Hunter*, 2011-Ohio-6524, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  "The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor."  *State v. Vaughn*, 2022-Ohio-3615, ¶ 16 (7th Dist.), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶11}  To reverse a jury verdict as against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required.  *Thompkins* at 389; Section 3(B)(3), Article IV of the Ohio Constitution.

**{¶12}** Appellant was convicted of obstructing official business pursuant to R.C. 2921.31(A), which provides: "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." The essential elements of this crime are: "(1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege." *State v. Kates*, 2006-Ohio-6779, ¶ 21 (10th Dist.).

**{¶13}** Words alone may constitute obstruction of official business. "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Wellman*, 2007-Ohio-2953, ¶ 12 (1st Dist.).

**{¶14}** Appellant's argument focuses mainly on the actions of the police after she threatened Fire Chief Ketzell. It is clear from the record, though, that the crime in this case was obstructing the fire department from its duties, and this crime had already occurred by the time the police arrived. Appellant appears to be arguing that a second act of obstruction did not occur, because she did not block the entry of the police into her home after they arrived. The state need not provide proof of a second act of obstruction. Appellant's interaction with the police served to bolster the evidence regarding her interference with firefighters' attempts to put out the fire. After Appellant threatened Chief Ketzell, it became necessary for police to confront or apprehend Appellant in order to alleviate the threat. Evidence shows Appellant left the porch and entered the house,

barricaded one of the doors, and fled to the attic of the house. Needlessly stalling or dragging out an investigation can serve as sufficient action to qualify as obstruction of official business. *State v. Woodley*, 2024-Ohio-2538, ¶ 14 (7th Dist.). The moments that were lost by Appellant's lack of cooperation and delay were moments that could have been used to get the fire under control.

{¶15} Appellant contends that her actions in response to the police presence were reasonable, given that she is a transgender person. There are two main problems with this argument. First, it does not appear from the record that her status as a transgender person ever arose during her encounter with the police. The second, and more important reason, is that Appellant's crime was her obstruction of the fire department personnel, which occurred prior to her interaction with the police. Appellant obstructed official business when she threatened Chief Ketzell and ordered him to stay away from the property. Appellant's threats and demeanor prevented Chief Ketzell from doing his job. No other action taken by Appellant was necessary to complete the commission of the crime. Chief Ketzell was lawfully at the scene to put out a fire that was out of control, located between Appellant's house and the next. Chief Ketzell testified that he could not do that after he was threatened by Appellant, causing him to call for police assistance. These actions have nothing to do with Appellant's later interaction with the police, or with her status as a transgender person. The elements of the crime are supported by sufficient evidence completely unrelated to Appellant's status.

{¶16} The same facts show that the conviction was not against the manifest weight of the evidence. The jury was free to believe Chief Ketzell's testimony that Appellant threatened him, and that he was prevented from performing his job due to her

Case No. 24 BE 0004

threats. The jury was free to believe the testimony that Appellant fled into the house when police arrived, barricaded a door, and then hid in the attic. No one questions that there was an unattended fire on the property that had grown out of control. There is no question that both Chief Ketzell and the law enforcement officers were performing lawful duties. The jury had ample evidence to choose from to determine that Appellant committed the crime, and the jury verdict is fully supported by the record.

{¶17} There is no support in the record for Appellant's arguments regarding the sufficiency and manifest weight of the evidence. Appellant's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

## Conclusion

{¶18} Appellant challenges her conviction for obstruction of official business on the basis of the sufficiency and manifest weight of the evidence. The record reveals Appellant interfered with the Village of Brookside Fire Department in putting out a fire very near her home. She threatened the fire chief and caused the fire department delay in putting out a dangerous fire. The record contains ample evidence of interference with both the fire department and law enforcement officers in carrying out their duties. Appellant's assignment of error is without merit. Her conviction and sentence are affirmed.

Robb, P.J. concurs.

Dickey, J. concurs.

[Cite as *State v. Anderson*, 2024-Ohio-5189.]

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Belmont County Court, Eastern Division, of Belmont County, Ohio, is affirmed. Prior stay of execution issued by this Court on March 20, 2024, is hereby lifted. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**