[Cite as *State v. Mundt*, 2026-Ohio-1413.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

STATE OF OHIO,

Respondent-Appellee,

v.

FREDERICK MUNDT,

Petitioner-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 NO 0525

---

Application for Reconsideration and En Banc Consideration

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Dismissed.

---

*Atty. Jordan C. Croucher,* Noble County Prosecutor, and *Atty. Stephen E. Maher*, Special Assistant Prosecuting Attorney, Senior Assistant Prosecuting Attorney General, Criminal Justice Section, Capital Crimes Unit, for Respondent-Appellee and

*Atty. Kimberly S. Rigby,* Managing Attorney, and *Atty. Morgan R. Dineen,* Assistant State Public Defender, Death Penalty Department of the Office of the Ohio Public Defender, and *Atty. Donald J. Malarcik,* for Petitioner-Appellant.

Dated: April 17, 2026

**PER CURIAM.**

**{¶1}** On February 17, 2026, Petitioner-Appellant, Frederick Mundt, filed an omnibus application for reconsideration pursuant to App.R. 26(A)(1) and for en banc reconsideration pursuant to App.R. 26(A)(2) with respect to our February 5, 2026 opinion and judgment entry in *State v. Mundt*, 2026-Ohio-382 (7th Dist.) ("merits opinion"). In our merits opinion, we affirmed the judgment entry of the Noble County Court of Common Pleas overruling and dismissing Appellant's serious mental illness petition for postconviction relief ("SMI petition"). The State of Ohio filed its opposition brief to the omnibus application on February 27, 2026. No reply brief was filed.

**{¶2}** In 2004, Appellant was convicted of four counts of aggravated murder, each with death specifications, two counts of rape, and one count of kidnapping, for the brutal kidnapping, rape, and murder of B.H., the seven-year-old daughter of Appellant's girlfriend. Before the death penalty phase, the trial court merged the four aggravated-murder counts into a single count of aggravated murder under R.C. 2903.01(C) (murder of a child under 13) and merged the four specifications into two: murder to escape detection, apprehension, trial, or punishment for another offense, R.C. 2929.04(A)(3), and murder committed during a kidnapping, R.C. 2929.04(A)(7). Appellant was sentenced to death.

**{¶3}** In 2021, the legislature amended R.C. 2953.21(A)(1)(a)(iv) and 2953.21(A)(3)(b) to permit a person convicted and sentenced to death to file a postconviction petition asking the trial court to render void the sentence of death and to order resentencing under division (A) of section 2929.06 of the Revised Code. R.C. 2953.21(A)(1)(a)(iv). Under division (A) of the SMI statute, a person has a "serious mental illness" if the preponderance of the evidence in the record establishes: (1) he has been diagnosed as described in division (B) of R.C. 2929.025 with Schizophrenia, Schizoaffective Disorder, Bipolar Disorder, or Delusional Disorder (R.C. 2929.025(A)(1)(a)); and (2) at the time of the aggravated murder, the qualifying condition, while not meeting the standard to be found not guilty by reason of insanity or the standard to be found incompetent to stand trial, nevertheless significantly impaired his capacity to exercise rational judgment with respect to conforming his conduct to the requirements of

the law or appreciating the nature, consequences or wrongfulness of his conduct at the time of the offense. (R.C. 2929.025(A)(1)(b)).

**{¶4}** The trial court concluded Appellant had failed to show he had a forensic diagnosis of a qualifying condition. Then, assuming arguendo that Appellant had demonstrated the required diagnosis, the trial court concluded Appellant failed to show the qualifying condition significantly impaired his capacity to exercise rational judgment with respect to conforming his conduct to the requirements of the law or appreciating the nature, consequences or wrongfulness of his conduct at the time of the offense.

**{¶5}** We found Appellant had been diagnosed with two qualifying conditions, Bipolar Disorder and Schizoaffective Disorder, as we interpreted subsection (A)(1)(a) to require only a clinical diagnosis of a qualifying condition rendered before or after the commission of the aggravated murder. However, we affirmed the trial court's dismissal of the SMI petition based on the dearth of evidence establishing the degree of impairment resulting from Appellant's qualifying condition in the days and hours preceding the aggravated murder, and the susceptibility of his conduct in the days following the aggravated murder to two conflicting, albeit rational, interpretations.

**{¶6}** In his omnibus application, Appellant asserts we applied a heightened abuse of discretion standard, at odds with our opinions in *Corey v. Corey*, 2021-Ohio-1288 (7th Dist.), *State v. Woodley*, 2024-Ohio-2538 (7th Dist.), and *State v. Walters*, 2024-Ohio-3179 (7th Dist.). Appellant further asserts we relied on clearly erroneous findings of fact. Both arguments relate solely to the portion of our merits opinion affirming the trial court's decision finding Appellant failed to show the significant impairment of his capacity to exercise rational judgment with respect to conforming his conduct to the requirements of the law or appreciating the nature, consequences or wrongfulness of his conduct at the time of the offense.

## APPLICATION FOR RECONSIDERATION

**{¶7}** App.R. 26(A)(1) provides for the filing of an application for reconsideration, but includes no guidelines to be used in the determination of whether a decision is to be reconsidered and changed. *D.G. v. M.G.G.*, 2019-Ohio-1190, ¶ 2 (7th Dist.). The test generally applied is whether the application for reconsideration calls to the attention of

the court an obvious error in its decision or raises an issue for our consideration that was not considered or not fully considered by us when it should have been. *Id.*

**{¶8}** "An application for reconsideration is not designed for use in instances where a party simply disagrees with the conclusions reached and the logic used by an appellate court." *Martin v. Taylor*, 2024-Ohio-3207, ¶ 1 (7th Dist.). Rather, "App.R. 26(A)(1) provides a mechanism by which a party may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law." *Id.*

**{¶9}** Appellant argues he only need show the trial court's decision was unreasonable to demonstrate an abuse of discretion. We articulated the abuse of discretion standard applicable in this appeal as follows:

> The Ohio Supreme Court summarized the abuse of discretion standard to be applied in postconviction appeals in *State v. Weaver*, 2022-Ohio-4371, as follows:
>
> In [*State v. Gondor*, 2006-Ohio-6679], this court plainly rejected a court of appeals' application of de novo review in reversing a trial court's postconviction-relief findings and held that abuse of discretion is the proper standard for reviewing such findings. *Id.* at ¶ 58. We explained that the term "abuse of discretion" connotes that " 'the court's attitude is unreasonable, arbitrary or unconscionable.' " *Id.* at ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Stated differently, an abuse of discretion involves more than a difference in opinion: the " 'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.' " *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384, 94 N.W.2d 810 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that " 'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance

thereof, not the exercise of reason but rather of passion or bias.' " *Id*., quoting *Spalding* at 384-385, 94 N.W.2d 810.

*Id.* at ¶ 24.

*State v. Mundt*, 2026-Ohio-382, ¶ 92 (7th Dist.).

**{¶10}** Appellant argues we applied a heightened abuse of discretion standard. His argument fails for two reasons: First, we cited the standard articulated by the Ohio Supreme Court in *Weaver.* Second, we never reached the outer limits of the standard because we found the trial court's conclusion was reasonable, which is the standard Appellant argues we should have applied.

**{¶11}** We opined:

> With respect to the impact of Appellant's qualifying condition on the day of the offense, the state argues there is no testimony in the record that Appellant was behaving or functioning abnormally, based on his plasma donation in the morning and M.H.'s decision to leave the children in his care in the evening. The state further argues Appellant's conduct following the rape, that is, his post-rape efforts to conceal his crimes, is evidence that his capacity to exercise rational judgment in regards to both his ability to conform his conduct to the requirements of law and to appreciate the nature, consequences and wrongfulness of his conduct at the time the offense was committed were not significantly impaired by his serious mental illness.
>
> [Diane] Mosnik [M.D., Ph.D., - Appellant's SMI petition expert] opined Appellant described symptoms of Bipolar Disorder in the days prior to the offense, including racing thoughts, irritability, angry outbursts, difficulty sleeping, and labile mood. On the day of the offense, Appellant reported irritability, gastrointestinal upset, depression, and racing thoughts. (Hrg. Tr., p. 160-161.) Appellant discontinued his medication roughly one week before the offense due to side effects including gastrointestinal upset. Further, Mosnik described Appellant's efforts to conceal the rape as "a very

disorganized, ineffective attempt to do that and he is deficient in his ability to do that because of the symptoms of the serious mental illness that significantly impair his capacity to exercise rational judgment and to engage in behaviors that make sense, that are rational." (*Id.* at p. 168.)

In determining Appellant's rational judgment was significantly impaired, Mosnik considered "things that happened prior to [the offense] that's documented in the record, information about what occurred on the day of the offense, at the time of the offense, and after the offense to the best of [her] ability as a forensic examiner, and consider[ed] and weigh[ed] all that information in the context of the statute." (Hrg. Tr., p. 172; 180.) For instance, Mosnik cited Appellant's explanation of the commission of the rape, that "there was no thought process, this just occurred, and then afterwards thinking everything was fine until he saw blood, some dishevel [sic] that maybe's she not alright." (*Id.* at p. 163.)

Further, Mosnik testified Appellant's neuropsychological profile established he was impaired in areas such as "impulsivity and impaired inhibitory control, impaired decision making, and the entire neuro-psych profile of impaired executive functioning, cognitive problem solving, impaired social problem solving and emotional regulation." According to Mosnik, these impairments were "attributable to the serious mental illness of Bipolar Disorder that a person cannot control or shut off by themselves" and as "demonstrated in the research, [are] not treated by the medication and continue even in partially treated or clinically stable individuals." (*Id.* at p. 163-164.)

Considering all the available evidence of Appellant's symptoms, neuropsychological profile, and the events before, during, and after the offense, Mosnik concluded to a reasonable degree of scientific certainty:

That as a result of the serious mental illness with which [Appellant] was diagnosed prior to and at the time of the offense in an active phase of

the illness, that he was significantly impaired in his capacity to exercise rational judgment in regards to both his ability to conform his conduct to the requirements of law and to appreciate the nature, the consequences and the wrongfulness of his conduct at the time the offenses were committed.

(*Id.* at p. 185.)

[Jaime] Adkins [Ph.D. - the state's SMI petition expert] on the other hand, opined there was no evidence in the record that Appellant was symptomatic on the day of the offense or the days that followed. Adkins testified the record was devoid of evidence that Appellant was behaving or functioning abnormally during his plasma donation in the morning, or later that evening when M.H. entrusted the care of the children to Appellant.

While Mosnik opined Appellant's post-rape conduct, that is, his efforts to conceal his crimes including the aggravated murder, were the product of his serious mental illness; Adkins opined Appellant's conduct was no different than any other criminal attempting to avoid arrest and conviction. Adkins further opined Appellant's post-rape conduct demonstrated Appellant's capacity to exercise rational judgment in regards to both his ability to conform his conduct to the requirements of law and to appreciate the nature, the consequences and the wrongfulness of his conduct at the time of the offense. Appellant hid B.H.'s body then convinced her family members that she was missing. Appellant participated in the subsequent search for B.H. Adkins opined Appellant's post-rape conduct demonstrates his thought process was clear and his actions were calculated to avoid detection.

With respect to division [(A)(1)(b)] of the SMI statute, the SMI trial court concludes Appellant's conduct both before and after the offense demonstrated he was not acutely psychotic when he committed the offense. The SMI trial court further finds Appellant's efforts to conceal his crime demonstrated Appellant's capacity to exercise rational judgment in regards

to both his ability to conform his conduct to the requirements of law and to appreciate the nature, consequences and wrongfulness of his conduct at the time of the offense was not significantly impaired by his mental illness.

In order to conclude the SMI trial court abused its discretion regarding division [(A)(1)(b)] of the SMI statute, we must find the SMI trial court's judgment is so profoundly and wholly violative of fact and reason that it evidences a perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. It is not enough that we would reach a different conclusion, or would not have found that reasoning process to be persuasive in view of countervailing reasoning processes that would support a contrary result.

*Here, a factfinder could reach two competing reasonable conclusions regarding Appellant's post-rape conduct.* According to Mosnik, Appellant's conduct demonstrates a frenzied, irrational campaign to avoid responsibility for his crimes, resulting from the significant impairment of his ability to conform his conduct to the requirements of the law. According to Adkins, Appellant's conduct establishes a calculated, rational, albeit poorly-conceived and executed campaign to avoid responsibility for his crimes, indistinguishable from the actions of scores of other defendants with no qualifying condition. Our standard of review requires deference to the trial court's interpretation in this circumstance. As the SMI trial court agreed with Adkins, the preponderance of the evidence establishes Appellant's capacity to exercise rational judgment with respect to conforming his conduct to the requirements of the law or appreciate the nature, consequences or wrongfulness of his conduct was not significantly impaired by his serious mental illness at the time of the offense. Accordingly, we affirm the trial court's dismissal of the SMI petition.

(Emphasis added) *Mundt* at ¶ 107-116.

{¶12} Although we opined Appellant must demonstrate a perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias in order to show an abuse of discretion, we ultimately concluded Appellant's post-offense conduct was susceptible to two competing albeit reasonable interpretations – the first articulated by Mosnik and the second articulated by Adkins.  We found no abuse of discretion as the trial court credited Adkins' interpretation.  Accordingly, we applied the reasonableness standard that Appellant argues is applicable here.

{¶13} Next, Appellant contends we predicated our opinion and judgment entry on erroneous findings of fact.  Within his factual arguments, Appellant asserts we once again applied a heightened legal standard, that is, he must prove he was acutely psychotic to show a significant impairment.  We acknowledged the state, through Adkins, appeared to argue Appellant must show he was acutely psychotic to establish a significant impairment of his capacity to exercise rational judgment with respect to conforming his conduct to the requirements of the law or appreciating the nature, consequences or wrongfulness of his conduct at the time of the offense. We plainly disagreed that evidence of psychosis was required, but acknowledged there was no evidence Appellant was acutely psychotic prior to or after the commission of the aggravated murder.

{¶14} Appellant argues we failed to undergo any analysis of the impact of his qualifying condition in the days and hours preceding the aggravated murder, but instead simply opined the trial court's decision finding no significant impairment was reasonable. The only evidence of the impact of Appellant's qualifying conditions prior to the aggravated murder was Mosnik's testimony that Appellant was experiencing racing thoughts, irritability, angry outbursts, difficulty sleeping, and labile mood. Mosnik further opined Appellant's qualifying conditions caused "impulsivity and impaired inhibitory control, impaired decision making, and the entire neuro-psych profile of impaired executive functioning, cognitive problem solving, impaired social problem solving and emotional regulation."  Simply stated, there is no evidence in the record Appellant was suffering from any of the foregoing symptoms in the days and hours preceding the aggravated murder.

{¶15} To the extent Mosnik relied on the commission of the rape to show significant impairment, she asserted "there was no thought process, this just occurred,

and then afterwards [Appellant thought] everything was fine until he saw blood, some dishevel [sic] that maybe's she not alright." (*Mundt* at ¶ 109).  However, Appellant told a psychologist who testified on his behalf during the penalty phase that during the crime, he had thought about "himself getting messed with" as a child and thought "it might be okay" if he "messed with" B.H.  (*Id.* at ¶ 10).

**{¶16}** Next, Appellant argues we required evidence of " 'bizarre' or 'psychotic behavior,' " and held Appellant must be incapable of "doing mundane tasks" in our subsection (A)(1)(b) analysis. (Application, p. 9-10).  To the contrary, we simply found no manifestation in the record whatsoever of any of the symptoms described by Mosnik. Tellingly, Appellant does not cite the evidence we allegedly neglected.  While we concede there is a paucity of evidence in the record, which is a consequence of the retroactive application of a statute enacted nearly twenty years after the commission of the aggravated murder, we are nonetheless limited to the record before us.

**{¶17}** Finally, Appellant argues the trial court's conclusion that Appellant did not have a diagnosis of a qualifying condition somehow invalidated its subsequent analysis as to whether Appellant had established a significant impairment of his capacity to exercise rational judgment with respect to conforming his conduct to the requirements of the law or appreciating the nature, consequences or wrongfulness of his conduct at the time of the offense.  We disagree.  Despite our conclusion that the trial court conflated the evidentiary requirements of R.C. 2929.025(A) by requiring a forensic diagnosis to satisfy subsection (A)(1)(a), we see no impact on the trial court's subsequent analysis of subsection  (A)(1)(b).

**{¶18}** In summary, we find no obvious error in our merits opinion or any issue that was not fully considered. Accordingly, we find Appellant's application for reconsideration is meritless.

### EN BANC CONSIDERATION

**{¶19}** App.R. 26(A)(2) provides for en banc consideration when "two or more decisions of the court on which they sit are in conflict . . ." "[I]f the judges of a court of appeals determine that two or more decisions of the court on which they sit are in conflict, they must convene en banc to resolve the conflict." *McFadden v. Cleveland State Univ.*,

Case No. 25 NO 0525

2008-Ohio-4914, paragraph two of the syllabus. Intra-district conflicts can arise when different panels of judges hear the same issue, but reach different results. *Gentile v. Turkoly*, 2017-Ohio-2958, ¶ 2 (7th Dist.), citing *McFadden* at ¶ 15.

**{¶20}** However, "[c]onsideration en banc is not favored and will not be ordered unless necessary to secure or maintain uniformity of decisions within the district on an issue that is dispositive in the case in which the application is filed." App.R. 26(A)(2)(a). The burden is on the party requesting en banc consideration to "explain how the panel's decision conflicts with a prior panel's decision on a dispositive issue and why consideration by the court en banc is necessary . . ." App.R. 26(A)(2)(b). En banc review will not be granted when the alleged conflict is between two factually distinguishable cases. *French v. Ascent Resources-Utica, LLC*, 2020-Ohio-6828, ¶ 9 (7th Dist.).

**{¶21}** Appellant cites three of our decisions to establish an intra-district conflict. However, none of the cited cases is an appeal of a postconviction petition. *Corey v. Corey*, 2021-Ohio-1288 (7th Dist.) is a domestic relations case. *State v. Woodley*, 2024-Ohio-2538 (7th Dist.) and *State v. Walters*, 2024-Ohio-3179 (7th Dist.) are direct appeals in criminal cases. Further, we ultimately concluded the trial court's decision was reasonable, therefore, there is no conflict. Accordingly, we find en banc reconsideration is unwarranted here.

## CONCLUSION

**{¶22}** For the foregoing reasons, Appellant's omnibus application for reconsideration and en banc consideration is dismissed.

**JUDGE KATELYN DICKEY**

**JUDGE CHERYL L. WAITE**

**JUDGE CAROL ANN ROBB**

Case No. 25 NO 0525

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**


TO THE CLERK: PLEASE SERVE COPIES OF THIS ORDER TO ALL COUNSEL OF RECORD AND ANY SELF-REPRESENTED PARTIES